HENRY SCHLICHTING, JR. V. TEXAS STATE BOARD
OF MEDICAL EXAMINERS

No. A-6617. Decided February 19, 1958.
Rehearing overruled March 26, 1958.
(310 S.W. 2d Series 557)

280

*McCarthy, Rose & Haynes,* of Amarillo, for appellant.

The court erred in granting a temporary injunction against

appellant because no legal authority existed for granting the same other than Article 4509 of the Revised Civil Statutes, as amended by the 53rd Legislature in 1953, and such amendment is and was unconstitutional and void in that the mandatory provisions of Article III, section 35 of the State Constitution was ignored and violated. Gulf Ins. Co. v. James, State Treasurer, 185 S.W. 2d 966; Texas La. Power Co. v. City of Farmersville, 67 S.W. 2d 235; American Surety Co. v. Atwell, 120 Texas 116, 36 S.W. 2d 715.

*Will Wilson,* Attorney General, *Cecil C. Rotcsh, John Reeves, Joe R. Carroll,* Assistant Attorney General, *Joseph H. Mims,* District Attorney of Midland County and *Leonard Howell,* County Attorney of Midland County, for appellee.

The trial court had jurisdiction and authority to issue the temporary injunction, since the provisions of Article 4509, as amended by the acts of the 53rd Legislature, page 1029, are in compliance with the provisions of section 35 of Article III of the Constitution of Texas. Central Education Agency v. Independent Sch. Dist. of El Paso, 152 Texas 56, 254 S.W. 2d 357; State v. Rubion, this volume 43, 308 S.W. 2d 4.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This is a direct appeal pursuant to Article 1738a, Vernon's Texas Civ. Stats., and Rule 499a, Texas R. Civ. Proc., from the District Court of Midland County, by the appellant-defendant. Schlichting, a practicing naturopath or natureopath, to review, on constitutional and other grounds, a temporary injunction granted at the suit of the appellee-plaintiff Texas State Board of Medical Examiners, acting under Art. 4509, Vernon's Texas Civ. Stats. as amended in 1953[1], and, in substance restraining

---

1.—"Art. 4509. The Texas State Board of Medical Examiners shall have the power to appoint committees from its own membership, and to make such rules and reuglations not inconsistent with this law as may be necessary for the performance of its duties, the regulation of the practice of medicine, and the enforcement of this Act. The duties of any such committees appointed from the Texas State Board of Medical Examiners membership shall be to consider such matters pertaining to the enforcement of this Act and the regulations promulgated in accordance therewith as shall be referred to such committees, and they shall make recommendations to the Texas State Board of Medical Examiners with respect thereto. The Texas State Board of Medical Examiners shall have the power, and may delegate the said power to any committee, to issue subpoenas, and subpoenas duces tecum to compel the attendance of witnesses, the production of books, records and documents, to administer oaths and to take testimony concerning all matters within its jurisdiction. The Texas State Board of Medical Examiners shall not be bound by strict rules of evidence or procedure, in the conduct of its

the appellant-defendant from practicing the art of healing or treating persons for physical ills.

For the reasons more fully appearing below, we have concluded that the injunction in question must be upheld.

The general ground for the injunction is that the appellant-defendant is practicing medicine as defined in Art. 4510, Vernon's Texas Civ. Stat.[2], and is doing so without possessing (and thus without having registered with the District Clerk) "the certificate evidencing his right to practice medicine" required by Art. 4498[3]. The restraints of the decree are, of course, conditioned upon the absence of such license and registration. The appellant-defendant did, indeed, prior to this suit, have a license to practice naturopathy under a statute known as Article

2.—"Art. 4510. Any person shall be regarded as practicing medicine within the meaning of this law:

"(1) Who shall publicly profess to be a physician or surgeon and shall treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof; (2) or who shall treat or offer to treat any disease or disorder, mental or physical or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation; provided, however, that the provisions of this Article shall be construed with and in view of Article 740, Penal Code of Texas, and Article 4504, Revised Civil Statutes of Texas as contained in this Act. Acts 1907, p. 224; Acts 1949, 51st Leg., p. 160, ch. 94, Sec. 21(b)."

3.—"Art. 4498. It shall be unlawful for any one to practice medicine, in any of its branches, upon human beings within the limits of this State who has not registered in the District Clerk's office of every County in which he may reside, and in each and every County in which he may maintain an office or may designate a place for meeting, advising with, treating in any manner, or prescribing for patients, the certificate evidencing his right to practice medicine, as issued to him by the Texas State Board of Medical Examiners, together with his age, post office address, place of birth, name of medical college from which he graduated, and date of graduation, subscribed and verified by oath, when, if wilfully false, shall subject the affiant to conviction and punishment for false swearing, as provided by law. The fact of such oath and record shall be endorsed by the District Clerk upon the certificate. The holder of every such certificate must have the same recorded upon each change of residence to another county, as well as in each and every County in which he may maintain an office, or in which he may designate a place for meeting, advising with, treating in any manner or prescribing for patients; and the absence of such record in any place where such record is hereby required shall be prima facie evidence of the want of possession of such certificate. Acts 1923, p. 292; Acts. 1931, 42nd Leg., p. 74, ch. 49, Sec. 2."

proceedings, but the determination shall be founded on sufficient legal evidence to sustain it. The Texas State Board of Medical Examiners shall have the right to institute an action in its own name to enjoin the violation of any of the provisions of this Act. Said action for an injunction shall be in addition to any other action, proceeding, or remedy authorized by law. The Texas State Board of Medical Examiners shall be represented by the Attorney General and/or the County or District Attorneys of this State. Before entering any order cancelling or suspending a license to practice medicine, the Board shall hold a hearing in accordance with the procedure set out in Article 4506, Revised Civil Statutes of Texas, 1925, as amended by this Act. As amended Acts 1953, 53rd Leg., p. 1029, ch. 426, Sec. 9."

4590d, Vernon's Texas Civ. Stats., which purported to recognize and regulate the practice of naturopathy, defining it as "that philosophy and system of the healing art embracing prevention, diagnosis, and treatment of human ills and functions by the use of several properties of air, light, heat, cold, water, manipulation with the use of such substances, nutritional as are naturally found in and required by the body, excluding drugs, Surgery, X-ray and radium therapy, and the use of X-ray equipment." However, in Wilson v. Texas State Board of Naturopathic Examiners, Texas Civ. App., 1957, 298 S.W. 2d 946, the Austin Court of Civil Appeals rendered judgment declaring that statute to be unconstitutional, from which an application for writ of error was by us refused. Although our action was with the notation "no reversible error," we necessarily approved the judgment declaring the statute to be void; and accordingly, since some little time prior to this suit, appellant-defendant has been actually practicing a healing art without a license of any kind.

The facts as above stated are admittedly to be taken as true from the pleadings and affidavits, which constitute the entire record so far as factual matters are concerned. About the only other material fact thus reflected is that the appellant-defendant had not, prior to this suit, been convicted in a criminal proceeding of violation of the laws regulating the practice of medicine. Other than as indicated by the above quotation from Art. 4590d, supra, the record is silent as to the character of naturopathy, its merits or demerits as a method of healing, its difference from other methods, and the character and amount of education and training required for one to become whatever may be meant by the term practicing naturopath.

The first attack of the appellant-defendant on the injunction is based on the alleged unconstitutionality of the particular provisions of Art. 4509, supra, under which this suit was brought, said provisions being additions to, and other changes in, the original article made by the amendment thereto known as H. B. 254, Ch. 426, Acts 1953, p. 1029, et seq. The original or unamended article, as it appears in the Revised Statutes of 1925, is also copied in the footnote[4] for purposes of comparison with

4.—"Art. 4509. Injunction.—The actual practice of medicine in violation of the provisions of this title, or in violation of any provision of Title 12, chapter 6, of the Penal Code, shall be enjoined at the suit of the State, but such suit for injunction shall not be entertained in advance of the previous final conviction of the party sought to be enjoined of the violation of any provision of said chapter of the Penal Code. In such suits for injunction, it shall not be necessary to show that any person is personally injured by the acts complained of. Any person who

the amended version copied as footnote 1. The former, entitled "Injunction," deals almost exclusively with injunctions against "the actual practice of medicine in violation of the provisions of this title, or - - of Title 12, chapter 6, of the Penal Code," and provides that such injunction shall be "at the suit of the state." The words "this title" refer to Title 71 dealing with public health, including Chapter 6, Arts. 4495-4512, entitled "Medicine." Admittedly, under this original Article 4509, a suit such as the present could only be maintained by the State, and thus not by the appellee-plaintiff Board, and, moreover, could "not be entertained in advance of the previous final conviction of the party sought to be enjoined." The latter provision also, were it presently applicable, would operate to defeat this suit, there having been "no previous final conviction" of the appellant-defendant. However, the mentioned amendment eliminated this "conviction" provision and also expressly authorized the Board to maintain whatever suits are authorized by the article. The purpose of the constitutional attack on the amendment is accordingly to make this suit subject to the restrictive provisions of the original article, which would prevent its being maintained.

■ The amendment deals with various articles regulating the practice of medicine and is said to be invalid in so far as Art. 4509 is concerned by reason of the inadequacy of the caption of the corresponding act or bill, which is fully quoted in the footnote.[5] It is said not to "express" sufficiently the "subject" of

5.—"An Act *amending* Article 4498a, Article 4499, Article 4499a, Article 4500, Article 4501, Article 4502, Article 4506, *Article 4509* and Article 4510 of the Revised Civil Statutes of Texas; providing for repeal of Article 4507 and Article 4508 of the Revised Civil Statutes of Texas; amending Article 741 and Article 743 of the Penal Code of Texas; requiring registration of licenses physicians, providing for duplicate licenses and endorsements, providing for temporary permits, making provision for the compensation of Board members, prividing a fee for license and reciprocal agreements, providing fees for examination and provision for revocation, cancellataion and suspension, *providing for the powers and duties of the Texas State Board of Medical Examiners*, repealing all laws and parts of laws in conflict herewith, providing severability; and declaring an emergency." (Emphasis supplied.)

may be or about to be so unlawfully practicing medicine in this State, may be made a party defendant in said suit. The Attorney General, the district attorney of the district in which the defendant resides, the county attorney of the county in which the defendant resides, or any of them, shall have the authority, and it shall be their duty, and the duty of each of them, to represent the State in such suits. No injunction, either temporary or permanent, shall be granted by any court, until after a hearing on complaint is had by a court of competent jurisdiction on its merits. In such suit no injunction or restraining order shall be issued until final trial and final judgment on the merits of the suit. If on the final trial it be shown that the defendant in such suit has been unlawfully practicing medicine, or is about to practice medicine unlawfully, the court shall by judgment perpetually enjoin the defendant from practicing or continuing the practice of medicine in violation of law as complained of in said suit. Disobedience of said injunction shall subject the defendant to the penalties provided by law for the

the amendment in respect of Art. 4509, as required by Art. III, Sec. 35 of the Texas Constitution. The object of requiring captions is, of course, to permit the reader of a bill, be he legislator, lawyer or "man in the street," to inform himself of its subject matter without having to read the body of the bill. Obviously this purpose is not accomplished, if the caption, for lack of sufficient provision therein or by the misleading character of its provisions, does not convey to the reader the necessary information. But, with particular reference to the instant case, it is equally plain that the object of the requirement will not be well accomplished by a caption so detailed as to require anywhere nearly as much time to read as would the body of the act itself.

■ In the instant case, the caption states "amending - - Article 4509 - - ." It has been held that such a reference, although not specifying the nature of the amendments, is adequate, where the subject matter of the actual amendments is "germane" to that of the provision amended—the theory being that the reader of the bill will get enough information by looking at the earlier law and the caption of the amendatory bill. Whatever the justification for such a rule, it undoubtedly exists. See Board of Water Engineers v. City of San Antonio, 155 Texas 111, 283 S.W. 2d 722, and cases discussed therein.

The difficulty, of course, comes in determining whether the content of the amendment is "germane" to the content of the original act, or portion thereof, in question. "Germane" means, according to a reliable dictionary, "closely allied; appropriate; relevant;" which meaning, in turn, repels that of identity. There is no point in speaking of an amendatory provision being germane unless we mean "different from" as well as "closely allied to" the original provision. Clearly the relationship that constitutes the germaneness may be of a somewhat general character.

In the Board of Water Engineers case, supra, we held that an amendatory provision prohibiting the withdrawal of water from the Guadalupe or Comal rivers to points outside their respective watersheds was not germane to an original law (Art.

---

violation of an injunction. The procedure in such cases shall be the same as in any other injunction suit as nearly as may be. The remedy by injunction given hereby shall be in addition to criminal prosecution. Such causes shall be advanced for trial on the docket of the trial court, and shall be advanced and tried in the appellate courts in the same maner and under the same laws and regulations as other suits for injunction. (Acts 1923, p. 291)."

1434a, Vernon's Texas Civ. Stats.) providing for the organization and corporate powers of corporations "for the purpose of furnishing a water supply to towns, cities and private corporations and individuals." That statute, as suggested by its number, was what might be termed a "corporation statute," as distinguished from a "water statute;" and, as stated in the opinion, it nowhere used "a word such as 'river,' 'stream,' 'watercourse,' 'watershed,' 'dam,' or 'lake.'" Its subject was remote from the regulation of water rights. Moreover, the caption in question described itself as "amending Sections 1 and 2" of the earlier law, the former section being a general authorization for the kind of corporations above mentioned and containing provisions concerning dividends, sinking funds and the like as being properly includable in the charter, while Sections 2 provided for general corporate powers such as that to contract with federal agencies and borrow money. The particular provision of the amending act repeated Section 1 word for word and then added a Section 1a with the provision in question concerning the two rivers. We think the decision is hardly persuasive in the instant case (although it undoubtedly is "germane" to the latter).

■ It is true that the body of the amendment to Art. 4509 added several provisions about the powers and functions of the Board, which considerably broaden the more or less exclusive subject of the original, to wit, that of abating violations of the laws regulating the practice of medicine by injunction. But this is not to say that the new provisions or changes concerning the original subject of injunctions thus became nongermane to the latter. Even a layman reading the caption of the amendment and the original article, and being interested in the matter such injunctions generally, should realize that he would quite possibly find something new on that very topic by reading the body of the amendment. As above stated, the judicial rule under discussion cannot possibly mean that the amendment, to be valid, must contain nothing new and no change that is important. The test is the closeness of the relationship of those new provisions or substantial changes to what went before. Certainly both of those here in question are closely related to the general subject of the original article. They are also intimately related to—although making vital changes in—the subsidiary or more particular subjects of the old article, to wit, (a) by whom the suit is to be brought and (b) conditions precedent to the suit. A provision that suit may be brought by the appellee-plaintiff Board is closely related to that of the original article requiring it to be brought by the State itself. Both are part of the larger idea of who shall bring the suit, the latter being a subject of

both versions. And the deletion by the amendment of the condition precedent of prior conviction is part of the common subject of conditions precedent to the suit. The mere fact that the reader of the amendment caption and old Art. 4509 would not, in reading them, be also reading the changes themselves, is not important. We did not, in the Board of Water Engineers case, supra, mean to imply the judicial rule in question to require that, for the caption of the amendment act to be adequate, the reader should be able, by merely referring to the old statute, to tell exactly what changes were being made in it by the body of the amending act.

The cited decision in Texas-Louisiana Power Co. v. City of Farmersville, Texas Comm. App., 67 S.W. 2d 235, is not persuasive, since there the express reference in the caption to a particular in which the named statute was being amended was in effect a misleading statement that this one change was the only one made, a condition not present in the instant case.

We thus conclude that the general reference in the caption to Art. 4509 as being amended is of itself sufficient to satisfy the constitutional requirement. Accordingly, as to the possibly additional reason to uphold the caption, based on the remaining relevant language therein "providing for the powers and duties of the Texas State Board of Medical Examiners," we need make only the following comment: that the quoted clause does not in anywise mislead the reader as to the contents of the body of the act, so as to make the situation parallel to that in the Texas-Louisiana Power Co. case last above discussed.

■ The next attack on the injunction assumes Art. 4509 to be valid as amended but contends it still not to authorize prosecution of this suit, since the relevant portion of the article gives the Board merely "the right to institute an action in its own name to enjoin the violation of any of the provisions *of this Act*" (emphasis supplied) as distinguished from the provision of the original article that "The actual practice of medicine in violation of the provisions of *this title*, * * * shall be enjoined at the suit of the State * * *." (Emphasis supplied.) The thesis is that, although the original words "this title" may no doubt have been taken to include Arts. 4498, 4509 and 4510, supra, and might thus have forbidden the appellant-defendant doing what he has been enjoined from doing, nevertheless, the words "of this Act" in the amending act cause the amended article to permit injunctions only as to conduct with which the amending act itself deals; and that the conduct so dealt with is only that

of holders of licenses to practice medicine, of whom the appellant-defendant admittedly is not one.

Without pausing to test the premise that the particular provisions of the amending act purport to apply only to holders of licenses to practice medicine, we hold that the words "this Act" do not have merely the narrow scope for which the appellant-defendant contends. The argument might have more weight had the act in question not been, as it was, an almost exclusively amendatory measure, plainly designed to change particular articles of, and to fit in with the existing arrangement of, chapter 6 of title 71 more or less as originally enacted by the so-called Medical Practice Act, Acts 38th Leg., Chap. 138 (1923). But, as it is, we think the context in which the words "this Act" occur in the amendment amply justifies the view that what was meant was the Medical Practice Act as thus amended. We fail to see, as the appellant-defendant sees, something essentially extraordinary in the idea of the Board being the plaintiff in suits against persons such as himself, as distinguished from those who have or have had a license to practice medicine. For example, the State Bar and its appropriate committees, who are expressly authorized by law to proceed in the courts against the practice of law by unauthorized persons, are actually agencies with a peculiar interest in, and thus a special competence for, the exercise of that function, in addition to their functions concerning unethical conduct of authorized practitioners. Our conclusion is a proper application of the rule stated in Shipley v. Floydada Independent School Dist., Texas Comm. App., 250 S.W. 159, 160, to the effect that:

"* * * When a new section has been introduced into a law, it must be construed in view of the original statute as it stands after the amendment is introduced, and it and all the sections of the old law must be regarded as a harmonious whole, all sections mutually acting upon each other."

See also American Surety Co. v. Axtell Co., 120 Texas 166,, 36 S.W. 2d 715.

■ The final contentions of the appellant-defendant are that the injunction violates Art. XVI, Sec. 31 of the State Constitution[6] and the 14th Amendment to the Constitution of the United States. The theory of both contentions is essentially that of dis-

6. "The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this state, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine."

crimination against the appellant-defendant in that he has a recognized healing skill or profession, which he is denied the right to practice for lack of a license or any way to procure a license. The answer to this is the same one made to a complaining masseur by our Court of Criminal Appeals in Germany v. State, 62 Texas Crim. Rep. 276, 137 S.W. 130, to wit, that by meeting the requirements for a license for the practice of medicine (as defined in Art. 4510, supra) he could readily procure the latter license, which in turn would permit him to practice his own peculiar method of diagnosis and treatment, there being no law prohibiting a licensed physician so to do. Indeed, the appellant, far from adducing proof that such a course would be an unfair burden on him by reason of the simplicity or other special characteristics of naturopathy, as compared to what is generally understood as the practice of "medicine" forthrightly admits that an express requirement conditioning all healing practices on the education and training now required for regular medical practitioners would be valid. The fact that the Medical Practice Act. supra (see Arts. 4510 and 4504) expressly excepts from its requirements practitioners in fields such as dentistry, chiropractic and chiropody, which occupations are licensed under separate provisions with less burdensome conditions, is mentioned by the appellant but not clearly urged as a factor of unfair discrimination. Certainly there is no evidence in the record, nor any judicial knowledge on our part, whereby we might adjudge it unfair or arbitrary to allow, for example, a chiropodist, to get a license upon the less onerous conditions presently required of him and yet require a naturopath to fulfill the more burdensome requirements for the practice of "medicine." In this behalf we can only say that from the very words of former Art. 4590d, supra, which appellant cites as an official recognition of naturopathy as a respectable profession, there is an obvious distinction between its field of operations and those of the recognized special or limited professions or occupations aforementioned. The latter are respectively limited to diagnosis and treatment with respect to rather narrow portions of the human anatomy, while the only limitations in the practice of naturopathy are limitations merely of methods employed. Evidently naturopaths purport to diagnose and treat human ills of all kinds, however limited their methods. In this connection, it was held in the Wilson case, supra, on the strength of decisions of the Court of Criminal Appeals therein cited, that, assuming Naturopathy to be a recognized "school of medicine," to allow it to be licensed upon easier terms than those required for the practice of "medicine" would violate the very provision of the state Constitution under which the appellant now claims relief. The same would be

290

true should we permit it to be practiced without any license at all, while enforcing a statute that requires practitioners of "medicine" to be licensed and on quite onerous conditions. We are cited to no decisions indicating the constitutional provisions in question to be violated by the injunction and hold that they are not.

The judgment of the trial court is affirmed.

Delivered February 19, 1957.

Delivered February 19, 1958.