**640**

P. E. DICKISON et al., Appellants,

v.

**CITY OF SAN ANTONIO, Appellee.**

No. 13806.

Court of Civil Appeals of Texas.

San Antonio.

July 19, 1961.

Rehearing Denied Sept. 6, 1961.

Charles J. Lieck, Jr., Dist. Atty., L. J. Gittinger, Claude D. Bell, Asst. Dist. Attys., San Antonio, Will Wilson, Atty. Gen., W. E. Allen, Asst. Atty. Gen., for appellants.

Matthews, Nowlin, Macfarlane & Barrett, Carlos C. Cadena, Lewis T. Tarver, Jr., San Antonio, for appellee.

BARROW, Justice.

This is a suit for declaratory judgment as to the liability of the City of San Antonio for 1959 State of Texas, County of Bexar, and certain other ad valorem taxes, as the result of the purchase by the City of San Antonio on May 1, 1959, of the street transportation system formerly owned by San Antonio Transit Company.

City of San Antonio, acting by and through the Transit Board of Trustees of San Antonio, Texas, brought the suit against P. E. Dickison, Bexar County Tax Assessor-Collector, Robert S. Calvert, Comptroller of the State of Texas, and San Antonio Transit Company (now San Antonio Corporation). City of San Antonio and San Antonio Corporation contended in the trial court and contend here, that under Article 7151, Vernon's Ann.Civ.Stats., as amended, and under Article XI, § 9, and Article VIII, §§ 1 and 2, of the Constitution of Texas, Vernon's Ann.St. neither the City nor San Antonio Corporation was liable for the eight-twelfths of the 1959 State and County taxes which would accrue after May 1, 1959, the date of the purchase of the transit system by the City, and that San Antonio Corporation is liable only for the

pro rata part of such 1959 taxes up to May 1, 1959. By cross-action, P. E. Dickison, Robert S. Calvert, and the State of Texas asserted that said Article 7151 is unconstitutional and that the City had assumed liability for taxes for the entire year of 1959, and they are entitled to judgment for taxes for the entire year, plus penalties and interest.

The trial was to the court, without a jury, and judgment was rendered in favor of the City of San Antonio, declaring that under Article 7151, supra, as amended, and Article XI, § 9, and Article VIII, §§ 1 and 2, of the Constitution of the State of Texas, neither the City nor San Antonio Corporation is liable for the taxes accruing after May 1, 1959; declaring that Article 7151, as amended, is not unconstitutional, and that San Antonio Corporation on October 14, 1959, duly tendered the full, proper and lawful amount of said 1959 taxes for the first four months of 1959, less lawful discount for payment on that date, which net amount was $3,709.17. The court rendered judgment that P. E. Dickison, Robert S. Calvert and State of Texas recover that amount from San Antonio Corporation. P. E. Dickison, Robert S. Calvert and the State of Texas have appealed. Findings of fact and conclusions of law were requested, and filed by the court.

Appellants contend that Article 7151, supra, as amended, is unconstitutional and void insofar as it permits a proration of taxes under the facts here presented, because the Act violates Article VIII, § 1, of the State Constitution, which requires that taxation shall be equal and uniform, and violates Article III, § 55, providing that the Legislature shall have no power to release any individual or any property from the payment of taxes levied by the State or any County; and the Act violates Article VIII, § 2, which, after setting out certain exempt properties, provides that any law exempting any property from taxation, other than the above mentioned property, shall be void.

It is not questioned that the City acquired title to the transit system on May 1, 1959, and continuously owned and operated the same throughout the remainder of the year for the transportation of members of the public as passengers within the metropolitan area of San Antonio, and that such use is a public use within the meaning of the Constitution of Texas. It is also unquestioned that the City of San Antonio is a municipal corporation, a body politic, whose property devoted to public use is exempt from taxation.

Article 7151, as amended in 1951, provides:

"All property shall be listed for taxation between January 1st and April 30th of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the first day of January shall be listed by or for the person purchasing or acquiring it. If any property has, by reason of any special law, contract, or fact, been exempt or has been claimed to be exempted from taxation for any period or limit of time, and such period of exemption shall expire between January 1st and December 31st of any year, said property shall be assessed and listed for taxes as other property; but the taxes assessed against said property shall be for only the pro rata of taxes for the portion of such year remaining.

"Provided further, that if the United States Government or any of its agencies or any other body politic having the power of condemnation shall take over the possession of property under authority of any law authorizing it to condemn said property, or under an option to buy said property from the owner, or under an agreement by the owner to sell said property, or shall

comply with the laws relating to condemnation to such an extent as to entitle it to the possession of said property, or to constitute a taking thereof from the owner or person in whose name title rests, then such condemning authority shall be considered the owner of said property for all the purposes of state and county taxation from the date of taking possession thereof, or from the date of its complying with the condemnation laws to the extent that it is entitled to possession of said property, or from the date it has complied with the ·condemnation laws to the extent that there has been a taking of said property from the owner, whichever occurs first. Acts 1909, p. 373; Acts 1943, 48th Leg. p. 190, ch. 109 § 1; Acts 1951, 52nd Leg. p. 859, ch. 484 § 1."

■ Paragraph one of the Act as originally adopted in 1909 remains unchanged. Paragraph two was added to the Act by amendment in 1943, Acts 48th Legislature. This amendment was confined to the United States Government or any of its agencies having the power of condemnation. Paragraph 2 of the 1943 amendment contained the identical language as set out above in the 1951 amendment, except that it did not contain the provision "or any other body politic." In other words, the 1951 amendment simply added that provision to the Act as amended in 1943.

Since the adoption of Article 7151 in 1909, the law has been that all property must be valued and assessed against the owner as of January 1 of the year, without regard to any increase or decrease in value, and without regard to any change of ownership during the year, subject to the provision that if the property was owned on the controlling date by an owner whose property is tax exempt, and the property is sold or transferred during the year to a non-exempt owner, such non-exempt owner shall pay only the pro rata of the taxes for that portion of the year that the property is owned by him. There was no provision for prorating the taxes in cases where the property was owned on January 1st by a non-exempt owner and sold during the year to an exempt owner. This provision requiring a non-exempt owner to pay only for the time during which he owned the property has been consistently upheld and applied on the ground that under the provisions of Article VIII, §§ 1 and 2, and Article XI, § 9, of the State Constitution, the property was exempt from taxation while owned by the tax-exempt body politic. State v. Moak, 146 Tex. 322, 207 S.W.2d 894; City of Austin v. Sheppard, 144 Tex. 291, 190 S.W.2d 486, 162 A.L.R. 1116; Childress County v. State, 127 Tex. 343, 92 S.W.2d 1011; State v. Stovall, Tex.Civ. App., 76 S.W.2d 206, error refused. Article 7151, by the 1951 amendment, simply reverses the situation as to ownership, and where the property is privately owned on January 1st and sold to or condemned by an exempt municipality during the year, it is taxable only for that portion of the. year during which it was privately owned, and is exempt from taxation during the remainder of the year, while owned by the municipality. We are of the opinion that this Act does no violence to any of the constitutional provisions above mentioned. We think the Act implements and effectuates the provisions of the Constitution exempting property owned by a municipality, and results in equal and uniform taxation, so far as the private owner is concerned, and exemption for the municipality, as required by the Constitution. Otherwise the municipality would have to pay the owner of property an amount equal to the taxes for the remainder of the year, in addition to the fair value of the property, which would result in the municipality paying taxes on its tax exempt property. Or, if the property is sold only for its fair value, the seller would lose the amount of taxes he is required to pay for the remainder of the year. We are not concerned here with sales during the year from one private owner to another. In such cases the taxes are due for the entire year, and

it matters not how the parties apportion the taxes among themselves.

■ We are also of the opinion that the Act of the Legislature in the 1951 amendment does no violence to the provisions of Article III, § 35, of the State Constitution. The Act deals with but one subject, which is expressed in its title, and the caption of the Act is sufficient to cover the Act as amended. The subject of the Act amended is the proper apportionment of taxes on property owned part of the tax year by a non-tax-exempt owner and the remainder of the year by a tax-exempt owner. All that the amended Act does is to make the provisions of the original Act applicable to "any other body politic." It is argued that the caption of the 1951 amendment fails to mention proration of taxes on voluntary sales, whereas such prorations are provided for in the body of the bill, and for that reason the 1951 Act violates Art. III, § 35. The caption of the 1951 amendment states: "An Act amending Article 7151, of the Revised Civil Statutes of Texas, 1925, as amended, * * *." The body of the amended Act makes provision for the proration of taxes by the owner of property where the United States Government or any of its agencies acquire property of a private owner, either by condemnation or by voluntary purchase and sale. As stated above, the only change brought about by the 1951 amendment is to include within the provisions of the law, "any other body politic" having the power of condemnation. A reading of the body of both Acts will reveal that the addition of those words is the only change made or intended to be made. By reading the caption of the Act of 1951, and the original Act, the Legislature and the public are advised of that change. We think the rule as stated by Justice Garwood in Schlichting v. Texas State Board of Medical Examiners, 158 Tex. 279, 310 S.W.2d 557, 561, is controlling:

"In the instant case, the caption states 'amending—Article 4509—.' It has been held that such a reference, although not specifying the nature of the amendments, is adequate, where the subject matter of the actual amendments is 'germane' to that of the provision amended—the theory being that the reader of the bill will get enough information by looking at the earlier law and the caption of the amendatory bill. Whatever the justification for such a rule, it undoubtedly exists. See Board of Water Engineers of State v. City of San Antonio, Tex., [155 Tex. 111,] 283 S.W.2d 722, and cases discussed therein."

The Court further said:

"Even a layman reading the caption of the amendment and the original article, and being interested in the matter of such injunctions generally, should realize that he would quite possibly find something new on that very topic by reading the body of the amendment. * * * The mere fact that the reader of the amendment caption and old Art. 4509 would not, in reading them, be also reading the changes themselves, is not important. We did not, in the Board of Water Engineers case, supra, mean to imply the judicial rule in question to require that, for the caption of the amending act to be adequate, the reader should be able, by merely referring to the old statute, to tell exactly what changes were being made in it by the body of the amending act."

Appellants rely strongly on the holding of the Supreme Court in Board of Water Engineers of State v. City of San Antonio, Texas, supra. We think the case is clearly distinguishable from the instant case, for the reasons stated in the Schlichting case, supra. In the Board of Water Engineers case the Court also had under consideration the amendment of an existing statute. The caption stated that the new act was an amendment of Sections 1 and 2 of the original act. The amendment did amend

**644**

Sections 1 and 2 in some respects, but went further and enacted Section 1–A, which injected into the bill an entirely new subject which was not related or even directly or indirectly covered or mentioned in the original act, and therefore not germane thereto. The new subject was not mentioned in the caption of the amended act, and the Court held that the caption did not meet the test required by Article III, § 35, of the State Constitution, and that, therefore, Section 1–A of the amended act was void. Upon authority of the rules stated in the two cases last above discussed, we think the 1951 Act amending Article 7151 as amended in 1943, does comply with Article III, § 35, of the State Constitution and is, therefore, valid.

Lastly, appellants contend that in the contract of sale between the City and San Antonio Transit Company (now San Antonio Corporation), the City assumed the payment of taxes on the property from May 1, 1959, to the end of the year, and that by reason thereof appellants became third party beneficiaries under the contract. The parties stipulated that the original contract of purchase contained the following provision:

"Prorations shall be made at the time of closing of revenues, expenses, insurance, taxes, licenses and permit fees, payrolls (excluding vacation pay which shall not be considered part of payrolls) and other items of a like nature applicable to such properties or the operation thereof, such prorations to be made in a manner customary and usual in transactions of this nature."

They further stipulated that the time of closing referred to was May 1, 1959, and that the final closing statement contained the following provision:

"State and County taxes—1959— have not been prorated, and if Company is required to pay Collector more than $\frac{4}{12}$ths, City will refund the Company the excess."

We are of the opinion that neither provision can be construed as an assumption by the City of taxes alleged to be due by the San Antonio Transit Company for the last eight months of 1959 on the property involved herein. The preliminary contract, which was superseded by the final closing contract, is only an agreement between the parties thereto to prorate that which is actually due by the Company on such items as "expenses, insurance, taxes, licenses, etc." and not what is claimed to be due on these items. Having held that, under the circumstances, no taxes were due after May 1, 1959, the Transit Company owed nothing and the City assumed nothing. Appellants' contention is overruled.

The judgment is affirmed.