

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

April 18, 1977

The Honorable Charles Barden
Executive Director
Texas Air Control Board
8520 Shoal Creek Boulevard
Austin, Texas 78758

Opinion No. H-981

Re: Authority of the Air
Control Board to grant
variances under the Clean
Air Act.

Dear Mr. Barden:

You have requested our opinion concerning various sections of the Texas Clean Air Act, V.T.C.S., art. 4477-5. Your questions are:

(1) Whether the Texas Air Control Board can grant variances from the requirements of Sections 3.27 and 3.28 of the Texas Clean Air Act and Texas Air Control Board Regulation VI for a new facility.

(2) Whether requiring a "new source" to comply with the permit requirements of the Texas Clean Air Act and the Board's regulations can result in an arbitrary or unreasonable taking of property, or in the practical closing and elimination of any lawful business, occupation or activity.

Section 3.21 of the Act provides:

The board may grant individual variances beyond the limitations prescribed in this Act or in the rules and regulations of the board whenever it is found, upon presentation of adequate proof, that compliance with any provision of this Act, or any rule or regulation of the board, will result in an arbitrary and unreasonable taking of property, or in the practical closing and elimination of any lawful business, occupation or activity, in either case without sufficient corresponding benefit or advantage to the people.

Sections 3.27 and 3.28 of the Texas Clean Air Act require persons constructing new facilities or modifying existing facilities to apply for and receive construction and operating permits from the Board if those facilities may emit air contaminants into the air of this state.  The Act defines a new source in Section 1.03(8) as:

> [A]ny stationary source, the construction
> or modification of which is commenced after
> the effective date of this statute. . . .

Section 3.27(b) requires an applicant to submit, with his application for a construction permit, plans and specifications to enable the Board to determine whether the proposed construction will comply with the applicable air control standards and the intent of the Texas Clean Air Act.  Section 3.27(c) provides as follows:

> If the board finds that the emissions from
> the proposed facility will contravene these
> standards or will contravene the intent of
> the Texas Clean Air Act, it shall not grant
> the permit. . . .

Similar provisions appear in Section 3.28.  Section 3.28(b) provides as follows:

> When all stipulations of the construction per-
> mit are met and the operation of the facility
> will not contravene air pollution control
> standards set by the board or will not contra-
> vene the intent of the Texas Clean Air Act, the
> board shall issue within a reasonable time the
> operating permit.

Your first question is whether section 3.21 applies to permits issued pursuant to sections 3.27 and 3.28.  Section 3.21 was a part of the original 1967 act whereas sections 3.27 and 3.28 were enacted in 1971.  Generally, an amendment is construed in harmony with existing provisions of the act amended; the provisions operate naturally upon each other. Schlichting v. Texas State Board of Medical Examiners, 310 S.W.2d 557 (Tex. 1958); American Surety Co. of New York v. Axtell Co., 36 S.W.2d 715 (Tex. 1931).  Of course, this principle applies only when there is no conflict between the amendment and the existing provisions.  In our view there is

no conflict between section 3.21 and sections 3.27 and 3.28. The latter two provide "limitations" and section 3.21 states that "[t]he board may grant individual variances beyond the limitations prescribed in this Act. . . ." There is no language contained in sections 3.27 and 3.28 which would indicate that section 3.21 is inapplicable thereto. Accordingly, in our opinion the Board may grant variances from the requirements of sections 3.27 and 3.28 where the standards contained in section 3.21 are satisfied.

Your second question is essentially whether a "new source" can satisfy the standards contained in section 3.21. As noted above a "new source" may be one which is either constructed or modified after the effective date of article 4477-5. A variance is authorized by section 3.21 only when compliance

> will result in an arbitrary and unreasonable taking of property, or in the practical closing and elimination of any lawful business . . . without sufficient corresponding benefit or advantage to the people.

It is difficult for us to perceive how a facility which is yet to be constructed could satisfy the variance requirements contained in section 3.21. The regulations of the Board are invalid if they are arbitrary or unreasonable. Sec. 6.01(e). It is well established that the enforcement of valid health regulations does not result in an arbitrary or unreasonable taking of property. Northwestern Laundry v. City of Des Moines, 239 U.S. 486 (1916); Nunley v. Texas Animal Health Commission, 471 S.W.2d 144 (Tex. Civ. App. -- San Antonio 1971, writ ref'd n.r.e.); Houston Compressed Steel Corp. v. State, 456 S.W.2d 768 (Tex. Civ. App. -- Houston [1st Dist.] 1970, no writ); Consolidated Rock Products Co. v. City of Los Angeles, 370 P.2d 342 (Calif. 1962), app. dism'd 371 U.S. 36 (1962). Thus, compliance with the act or with valid rules and regulations by a facility yet to be constructed would not, in our opinion, result in an arbitrary or unreasonable taking of property. Nor can we understand how the second test of section 3.21 is applicable to facilities which are to be constructed, for at the time of the permit application, there would be no business in existence which could be practically closed. See Europak, Inc. v. County of Hunt, 507 S.W.2d 884 (Tex. Civ. App. -- Dallas 1974, no writ); Attorney General Opinion H-455 (1974).

Sections 3.27 and 3.28 also require construction and operating permits for "new sources" which are modifications of existing sources. We cannot say as a matter of law that no modification could ever be entitled to a variance in order to prevent the "practical closing and elimination of any lawful business." For example, a source may be required to change fuels in order to avoid closing its operations, and it may not be feasible to attain the same discharge level with the new fuel. It is within the power of the Board to determine whether such modifications qualify for a variance under section 3.21. Of course, an applicant for a variance must show that compliance with the regulations would result in a "practical closing" of the business or activity and that there is not "sufficient corresponding benefit or advantage to the people."

### S U M M A R Y

Section 3.21 of article 4477-5 is applicable to sections 3.27 and 3.28 thereof. A facility which is to be constructed could not meet the standards for a variance under section 3.21. Whether a modification of an existing facility is entitled to a variance is within the discretion of the Air Control Board under the standards provided in section 3.21.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

kml