**James A. BEDFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–84–734–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 12, 1985.

776

William S. Carpenter, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., John F. Phillips, William J. Delmore, III, Asst. Dist. Attys., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of attempted murder. Appellant was found guilty by a jury and his punishment, enhanced by a prior conviction, was assessed at life in the Texas Department of Corrections. We affirm.

In appellant's first ground of error, he asserts the trial court erred in denying his Motion to Set Aside the Indictment for failing to provide a speedy trial. The state's reply to appellant's first ground of error includes an attack on the constitutionality of the Speedy Trial Act (the Act), Tex.Code Crim.Proc.Ann. ch. 32A (Vernon Supp.1985). Appellant complains in his second ground of error that the indictment is void because it violates Article 51.14 of the Texas Code of Criminal Procedure. In his final ground of error, appellant argues the trial court erroneously admitted evidence of prior acts of misconduct.

Appellant and Dianna Israel, the state's complaining witness, were romantically involved during 1979. In early October of that year, the complainant informed appellant she wished to terminate their relationship. Thereafter, appellant made several threats of violence against her. On October 25, 1979, he shot the complainant once in the stomach, twice in the back and twice in the legs. She was hospitalized for four months. Appellant then fled from the State of Texas. A complaint was filed on November 14, 1979, and an indictment was returned on November 26, 1979. The state was unaware of appellant's whereabouts from the date of the offense until May 26, 1983. The Harris County Sheriff's Office was then informed that he was in custody in Atlantic County, New Jersey. Appellant was returned to Texas on June 5, 1984, to stand trial for the attempted murder of the complainant.

Before reaching the substance of appellant's grounds of error, we will first discuss the state's contention that the Texas Speedy Trial Act is unconstitutional. The state bases its argument on the following assertions:

1. The caption of the Act violates Article III, Section 35 of the Texas Constitution;

2. The Act is an impermissible legislative encroachment on the judiciary, in violation of Article II, Section 1 of the Texas Constitution; and

3. The Act is unconstitutionally vague.

The state first contends the Speedy Trial Act is unconstitutional because its caption fails to give a reasonable reader fair notice of the subject and contents of the bill. Article III, Section 35 of the Texas Constitution provides:

No bill ... shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an Act, which shall not be expressed in the title, such Act shall be void only as to so much thereof, as shall not be so expressed.

Tex. Const. art. III, § 35.

The Court of Criminal Appeals has stated that "[t]he reason underlying this constitutional requirement [that the title of a bill express its subject] is to advise the Legislature and the people of the nature of each particular bill so as to prevent the insertion of obnoxious clauses which might otherwise be engrafted on it and become law." *White v. State*, 440 S.W.2d 660, 664 (Tex.Crim.App.1969) (citations omitted). Article III, Section 35 requires the title of a bill to be "specific enough to give a reasonable reader fair notice of the subject and contents of the bill." *Ex parte Crisp*, 661 S.W.2d 944, 946 (Tex.Crim.App. 1983) (citations omitted), *reh'g denied*, 661 S.W.2d 956. The courts have been admonished to liberally construe titles to acts so as to uphold their constitutionality if possible. *Id.* *See also Stein v. State*, 515 S.W.2d 104 (Tex.Crim.App.1974); *White v.*

*State,* 440 S.W.2d at 660. However, even the most liberal construction will not save a bill if its caption is constitutionally infirm. *Stein v. State,* 515 S.W.2d at 107; *White v. State,* 440 S.W.2d at 665. Furthermore, the caption of an amendatory act must conform somewhat more strictly to the subject matter of its body than must the caption of an original act. *Ex parte Crisp,* 661 S.W.2d at 946; *White v. State,* 440 S.W.2d at 665.

■ The Speedy Trial Act, an original enactment, was promulgated by the 65th Legislature as Senate Bill No. 1043. The caption provides readers with the following information:

> An Act relating to a speedy trial of criminal cases; *amending* the Code of Criminal Procedure, 1965, as amended, *by adding* Chapter 32A, *by adding* Articles 17.-151 and 28.061, and *by amending* Articles 29.02 and 29.03; providing for an effective date; and declaring an emergency.

Ch. 787, 1977 Tex.Gen.Laws 1970. (emphasis added).

The state argues that the caption of the Speedy Trial Act suffers from the same defect as the caption considered in *White.* In that case, the Court of Criminal Appeals found that the caption of the 1967 Act amending the 1959 Dangerous Drug Act, ch. 425, § 1b 1959 Tex.Gen.Laws 923, was unconstitutional because it failed to give readers fair notice of the radical changes in the penalty provisions of the Dangerous Drug Act and of the elimination of penalties for other offenses provided for in that Act. *White v. State,* 440 S.W.2d at 667. The amending act's caption provided, in part, as follows:

> An Act to include lysergic acid diethylamide ... in the list defining "dangerous drugs," and specifying its possession to be an unlawful act; ... *amending* Subsection (a) of Section 2, Subsection (d) of Section 3 and *Section 15*, Chapter 425, Acts of the 56th Legislature, Regular Session, 1959 as amended....

*Id.* at 663. (emphasis added).

The state argues that even though the caption to the amending act in *White* spe-cifically indicated that Section 15 (the penalty provision of the Dangerous Drug Act) was subject to amendment, the Court of Criminal Appeals nevertheless held the amendment unconstitutional for its failure to give readers notice of the drastic changes in the penalty provision found in the body of the amending act. The state compares this caption with that of the Speedy Trial Act by pointing out that although the caption to the Speedy Trial Act specifically indicates that Article 28.061 is a newly created section of the Code of Criminal Procedure, it gives no notice that this section requires the discharge of the defendant if the state fails to provide a speedy trial as required by Article 32A.02. The state urges us to follow the holding of the court in *White.*

However, because of the differences in this situation and the one presented to the court in *White,* we are unable to reach the conclusion the state presses upon us. We note that in *White* the court dealt with the caption to an *amending* act. The Speedy Trial Act is an *original enactment* which codifies a constitutional right. Tex.Const. Art. I, § 10. As was previously stated, a less strict rule of construction is permitted for captions of original acts, as compared with those of amending acts. *Ex parte Crisp,* 661 S.W.2d at 946; *White v. State,* 440 S.W.2d at 665. Further, the caption in *Crisp* failed to specify the chapter, article or section of the law which was to be amended; Senate Bill 1043 does not suffer from this fatal error.

Also, the *White* amendment drastically changed the penalty provisions of the Dangerous Drug Act without fair notice. *White v. State,* 440 S.W.2d at 663, 664. However, Article 28.061 does not change the sanction for failure to provide a speedy trial; it merely *codifies* the only sanction the constitution ever provided. *Turner v. State,* 545 S.W.2d 133, 139 (Tex.Crim.App. 1977); *Beddoe v. State,* 681 S.W.2d 114, 115 (Tex.App.—Houston [14th Dist.] 1984, pet. granted). Moreover, the *White* caption eliminated penalties for offenses defined in

other sections of the Dangerous Drug Act without giving notice to readers of this elimination. This failure was perhaps the most obvious violation of Article III, Section 35. The state points out no similar failure in the caption of the Speedy Trial Act. In *Beddoe v. State*, this court held the caption of the Act did not violate Article III, Section 35. Because we believe the result reached by this court in *Beddoe* is correct, we decline the state's request to reconsider it.

It should also be noted that the Speedy Trial Act is not a penal statute, but is instead a rule of criminal procedure and, in effect, a statute of limitations. As an amendment to a rule of criminal procedure, the requirements of "full disclosure" of the contents change:

> When the title of an original act is sufficient to embrace the matters covered by the provisions of the amendatory act, the title of the latter act is not required to state the subject of the law amended or to specify the nature of the proposed amendment.

*White v. State*, 440 S.W.2d at 665. *See also Shannon v. Rogers*, 159 Tex. 29, 314 S.W.2d 810 (1958); *Schlichting v. Texas Board of Medical Examiners*, 158 Tex. 279, 310 S.W.2d 557 (1958).

In summary, we hold that the caption of the Speedy Trial Act complies with Article III, Section 35. Its caption gives reasonable readers fair notice of the subject to be addressed in the Act, of the fact that the Code of Criminal Procedure is to be amended, and of the fact that new matter is to be found in the body of the bill. Article III, Section 35 requires no more.

■ The state further questions the constitutionality of the Speedy Trial Act by arguing it violates the doctrine of separation of powers found in Article II, Section 1 of the Texas Constitution. That provision states:

> Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1.

In its brief, the state urges that Article 28.061 of the Act constitutes an impermissible legislative encroachment upon the functions of the judiciary. It directs this court to the case of *Coate v. Omholt*, 662 P.2d 591 (Mont.1983), and cases cited therein in support of its assertion. In *Coate*, the Montana Supreme Court held unconstitutional two statutes which imposed financial sanctions on judges if decisions were not reached or if opinions were not written within the time constraints set by the statutes. Based on the separation of powers clause of the Montana Constitution, the court concluded that "the question of when cases shall be decided and the manner in which they shall be decided, is a matter solely for the judicial branch of government." *Id.* at 593. While we agree with the Montana opinion as it pertains to that fact situation, we do not believe it is analogous to our fact situation. Article 28.061 focuses solely on prosecutorial delays and neglect. *Barfield v. State*, 586 S.W.2d 538 (Tex.Crim.App.1979); *Taylor v. State*, 666 S.W.2d 157 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd).

We find no authority holding that the legislature may not constitutionally impose time limitations for the prosecution of cases and provide for sanctions, including dismissal, when the state fails to timely prosecute defendants. To the contrary, the Code of Criminal Procedure embodies numerous examples of statutes which provide for such time limitations and sanctions. *See, e.g.*, Tex.Code Crim.Proc.Ann. arts. 12.01–12.07, 51.14. We believe statutes of limitations provide the closest analogy. No one can seriously question the legislature's authority to enact such statutes and provide sanctions for the failure to comply

with them. It has been stated that "enactments limiting the time for the prosecution of offenses are measures of public policy only and are entirely subject to the will of the legislature...." *Hill v. State,* 146 Tex.Crim. 333, 171 S.W.2d 880, 882 (1943), *quoting* 22 C.J.S. *Criminal Law* § 224 (1961). *See also Vasquez v. State,* 557 S.W.2d 779 (Tex.Crim.App.1977) (where defendant challenged the constitutionality of an amendment to a criminal statute of limitations as being an ex post facto law). Articles 32A.02 and 28.061 appear to us to be no more than "enactments limiting the time for the prosecution of offenses," and, as such, are properly within the sphere of legislative authority. Moreover, Article 28.061 is not an encroachment on the judiciary's substantive decision-making role, since it disposes of cases solely on the procedural ground of undue delay and without regard to the guilt or innocence of the accused. *See United States v. Brainer,* 691 F.2d 691 (4th Cir.1982). While the state's separation of powers argument is thought-provoking, we find no merit in it as it relates to the Speedy Trial Act.

■ In its final attack on the constitutionality of the Act, the state urges us to find it void for vagueness. The state argues broadly that the enormous and still-growing body of case law concerning the interpretation of the Section 4 exclusionary provisions proves that the statutory scheme is too indefinite for further attempts at judicial enforcement. It cites no authority in support of its argument. We share the concern of the state and the defense bar that, in its application, the Speedy Trial Act is a disappointing failure. Since its enactment, it has been abused by both the prosecution and the defense, and it has wholly failed to provide the protection against prosecutorial delay for which it was enacted. The state, by merely announcing "ready" within the proscribed time limits, can cause the trial to be delayed for indefinite periods of time. Case law has proven that it is almost impossible to overcome the burden of presumption of readiness once the state announces "ready" or testifies that it was "ready," whether or not it announced same, within the proscribed time limitations. On very few occasions has the Court of Criminal Appeals found the state was not ready in contradiction to its declaration of readiness. We also share the concern of the state over the great body of case law interpreting and applying the provisions and exceptions in the Speedy Trial Act and agree that a change is appropriate. However, while we find the Act unworkable and impractical, we do not find it unconstitutional.

■ Having determined that the Speedy Trial Act is not constitutionally infirm, we turn now to the substance of appellant's grounds of error. Appellant asserts in his first ground that he was denied a speedy trial under Article 32A.02. Specifically, appellant complains the state was not ready for trial within 120 days from the commencement of the criminal action. A criminal action commences for speedy trial purposes when a complaint is filed. Tex. Code Crim.Proc.Ann. art. 32A.02, sec. 2(a). A complaint was filed against appellant on November 14, 1979. Appellant was not returned to Texas until June 5, 1984, obviously more than 120 days after the action commenced. The period from November 14, 1979, to May 26, 1983, is excludable under Article 32A.02, Section 4(4)(A) because appellant's whereabouts were unknown to the state and because he was attempting to avoid apprehension or prosecution. The focus of appellant's speedy trial argument is the period between May 23, 1983, and June 5, 1984.

■ The appearance of the accused is the state's burden. *Prince v. State,* No. 763–82 (Tex.Crim.App.1984); *Newton v. State,* 641 S.W.2d 530 (Tex.Crim.App. 1982). Further, the state must show due diligence in attempting to secure the accused's presence. *Prince v. State,* No. 763–82 at 3–4. The question to be determined is whether the state exercised due diligence in securing appellant's presence from the time it learned of his whereabouts until he was returned to Texas to stand trial. The applicable exclusions

presented by the state include Section 4(1), (5) and (9), which provide as follows:

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(1) a reasonable period of delay resulting from other proceedings involving the defendant, including ... trials of other charges;

\* \* \* \* \* \*

(5) a period of delay resulting from the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial;

\* \* \* \* \* \*

(9) a period of delay resulting from detention of the defendant in another jurisdiction, if the state is aware of the detention and exercises due diligence to obtain his presence for trial....

The following is a chronology and summary of the state's efforts to secure appellant's presence in Texas:

May 26, 1983: Harris County Sheriff's Office first informed that appellant was in custody in Atlantic County, New Jersey.

June 1, 1983: Harris County District Attorney's Office received teletype regarding appellant's custody and was informed that appellant refused to waive extradition.

June 20, 1983: Extradition approved within District Attorney's Office; Sheriff's Office notified of the decision.

June 27, 1983: Need for identity affidavit of appellant noted by District Attorney's Office.

July 20, 1983: Photo of appellant received by District Attorney's Office.

July 29, 1983: Identity affidavit, to accompany photo, executed by complainant.

August 1, 1983: District Attorney requested a governor's warrant of Governor of Texas.

August 4, 1983: Texas governor's warrant mailed to Governor of New Jersey.

August 23, 1983: Atlantic County, New Jersey, Prosecutor's Office received New Jersey's governor's warrant and learned of aggravated robbery charges pending against appellant in Camden County, New Jersey.

August 25, 1983: Appellant transferred from Atlantic County to Camden County to stand trial for aggravated robbery; New Jersey governor's warrant given to Camden County officials for use as a "detainer."

August 31, 1983: District Attorney's Office notified of appellant's transfer to Camden County and that an interstate detainer would be necessary in the event appellant was convicted.

December 15, 1983: Appellant convicted of robbery, terroristic threat and auto theft in Camden County and placed in county jail to await sentencing.

December 16, 1983: Camden County notified Harris County Sheriff's Office of appellant's conviction and sentencing date; also informed Sheriff's Office that Texas can move to have appellant returned after sentencing under Interstate Agreement on Detainers Act.

February 1, 1984: Appellant sentenced to 20 years on New Jersey conviction.

February 3, 1984: Sheriff's Office notified that appellant was sentenced and was now available under Interstate Agreement on Detainers Act.

March 6, 1984: Interstate detainer papers for involuntary return sent from First Assistant District Attorney of Harris County to trial prosecutor for execution.

March 19, 1984: Appellant signed voluntary return request.

March 22, 1984: Superintendent of New Jersey prison sent appellant's request to Harris County.

March 23, 1984: Trial prosecutor and trial court signed Interstate Agreement on Detainers forms for involuntary return of appellant.

March 26, 1984: District Attorney's Office received appellant's voluntary return request of March 22.

March 28, 1984, through April 10, 1984: District Attorney's Office and Sheriff's Office exchange necessary Interstate Agreement on Detainers forms in light of appellant's voluntary return request. April 17, 1984: Proper Interstate Agreement on Detainers papers sent by District Attorney's Office to New Jersey. June 5, 1984: Appellant returned to Harris County from New Jersey and placed in Harris County Jail. August 27, 1984: State filed first written announcement of ready. October 29, 1984: State announced at Hearing on Appellant's Motion to Set Aside the Indictment that it was ready for trial and had been ready at all times applicable under the Speedy Trial Act.

From May 26, 1983, through August 23, 1983, appellant's whereabouts were known to the state, but he resisted being returned for trial by refusing to waive extradition. Therefore, this period may be excluded from the time in which the state must be ready for trial under Section 4(5). Furthermore, during that period of time the state knew that appellant was being detained for crimes committed in another jurisdiction. If it exercised due diligence in obtaining his presence, this period of time would be properly excluded under Section 4(9) as well. We believe the evidence is sufficient to show the state's due diligence in attempting to secure appellant's presence.

Contrary to appellant's assertions, the situation presented before us is not similar to the one before this court in *Taylor v. State*, 666 S.W.2d 157 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). In that case we found the state failed to offer *any* evidence of diligence in returning Taylor to Harris County. Here, the state succeeded in obtaining a governor's warrant shortly after appellant was properly identified by complainant in her affidavit. It is our opinion that the state exercised due diligence in attempting to obtain the presence of appellant for trial during the period from May 26, 1983, through August 24, 1983. *See also Simonsen v. State*, 662 S.W.2d 607 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd).

From August 25, 1983, until February 3, 1984, appellant was detained in New Jersey for trial on other criminal charges. This period of time is properly excluded under Section 4(1).

The final period of concern is from February 3, 1984, the date the state learned appellant was sentenced in New Jersey, until June 5, 1984, the date appellant was returned to Texas. The only exclusion applicable to this period is Section 4(9). Under it, the state must show that it exercised due diligence in obtaining appellant's presence. We believe the evidence is sufficient to show that the state exercised due diligence, considering the necessity of processing, executing and sending two separate sets of interstate detainer forms because of appellant's tardy request to be returned voluntarily.

*Prince v. State*, No. 763–82 (Tex.Crim. App. Sept. 9, 1984), cited by appellant in support of his argument that the state failed to exercise due diligence, is inapposite to this situation. In *Prince*, the accused was in federal custody in Texarkana on February 1, 1980, when Dallas County authorities first put a detainer on him. On February 15, Prince was in Dallas County to stand trial for the state charge; but on April 4, 1980, after being convicted on a federal charge, he was returned to federal custody in Kansas without having been tried on the state charge. The state offered no explanation for the failure to try Prince while he was in Texas. It was nearly seven months later when Dallas County authorities put a second detainer on him and two months after that before they began the Interstate Agreement on Detainers process. The Court of Criminal Appeals held that the state had failed to exercise due diligence in obtaining Prince's presence for trial. The case before us, however, simply does not present a comparable situation. Ground of error number one is overruled.

In his second ground of error, appellant argues that the indictment against him is void because he was not brought to trial within 180 days, as required by Article 51.14 of the Code of Criminal Procedure. Appellant made no such contention at trial. It is well settled that the ground of error presented on appeal must comport with the objection raised at trial, otherwise nothing is presented for review. *Akbar v. State,* 660 S.W.2d 834 (Tex.App.—Eastland 1983, pet. ref'd) (citations omitted). Appellant's second ground of error is overruled.

Appellant contends in his final ground of error that the trial judge erred in admitting evidence of prior acts of misconduct. However, in an attempted murder prosecution, prior threats and altercations between the victim and the accused are admissible to show relevant facts and circumstances surrounding the attempted killing and the relationship existing between the two parties in order to show the condition of appellant's mind at the time of the offense. Tex.Penal Code Ann. § 19.06 (Vernon 1974); *Hall v. State,* 640 S.W.2d 307 (Tex.Crim.App.1982). Appellant's third ground of error is therefore overruled.

Accordingly, the judgment of the trial court is affirmed.