

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0812-08

**HERNAN ARQUIMIDES RAMOS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## IN CAUSE NO. 01-06-00521-CR FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, KEASLER, and COCHRAN, JJ., joined. KELLER, P.J., filed a dissenting opinion. HERVEY, J., concurred in the result. WOMACK, J., dissented.

We granted review in this case to determine: (1) whether our state felony forgery statute covers the forgery of a Social Security card[1] and (2) whether a jury must be instructed that in the definition of the felony forgery offense, the term "instrument" means "negotiable instrument." We

---

[1] We note that it is also a federal offense to forge such a card. Under 42 U.S.C. § 408, a person commits a felony, punishable by fine or imprisonment or both, when, for the purpose of obtaining a benefit to which he is not entitled, or of obtaining anything of value from anyone, he "knowingly . . . counterfeits a social security card."

answer the first question in the affirmative and the second question in the negative.

On May 13, 2005, a Harris County grand jury returned an indictment charging Hernan Arquimides Ramos with felony forgery of a government instrument under Texas Penal Code § 32.21(b) and (e)(3).[2] The indictment alleged in relevant part that on or about April 2, 2005, in Harris

---

[2] Our state forgery statute, Texas Penal Code § 32.21, provides:

"(a) For purposes of this section:
(1) "Forge" means:
(A) to alter, make, complete, execute, or authenticate any writing so that it purports:
(i) to be the act of another who did not authorize that act;
(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or
(iii) to be a copy of an original when no such original existed;
(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or
(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).
(2) "Writing" includes:
(A) printing or any other method of recording information;
(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and
(C) symbols of value, right, privilege, or identification.
(b) *A person commits an offense if he forges a writing with intent to defraud or harm another*.
(c) Except as provided in Subsections (d) and (e) an offense under this section is a Class A misdemeanor.
(d) An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.
(e) *An offense under this section is a felony of the third degree if the writing is or purports to be*:
(1) part of an issue of money, securities, postage or revenue stamps;
(2) a government record listed in Section 37.01(2)(C); or
(3) *other instruments issued by a state or national government or by a subdivision of either*, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.

(continued...)

County, Ramos:

> "did then and there unlawfully, and with intent to defraud and harm another, forge a writing, namely a government instrument issued by the United States, attached hereto as Exhibit A, which purported to be the act of another who did not authorize that act, by possessing it with intent to utter it, and while knowing it was forged."

"Exhibit A" was a photocopy of the front and back of a card which appeared to be, but was in fact not, a genuine Social Security card issued by the Social Security Administration, an agency of the United States Government.

On May 31, 2006, the State brought Ramos to trial before a petit jury on his plea of not guilty. At the guilt stage of that trial, the State presented evidence that on May 2, 2005,[3] in the parking lot of a Home Depot store in Harris County, Ramos sold a forged Social Security card to an undercover police informant. The forged card was identical to the one pictured in the indictment's "Exhibit A."

At the close of the evidence at the guilt stage, Ramos asked the trial court to instruct the jury that the term "instrument" as used in the definition of the felony forgery offense meant "negotiable instrument," in accordance with the definition in Texas Business and Commerce Code § 9.102(47). The trial court denied the request. The jury later found Ramos guilty as charged in the indictment.

---

[2](...continued)
(f) A person is presumed to intend to defraud or harm another if the person acts with respect to two or more writings of the same type and if each writing is a government record listed in Section 37.01(2)(C)." (Emphasis added.)

Texas Penal Code § 37.01(2)(C), in turn, provides that "government record" means "a license, certificate, permit, seal, title, letter of patent, or similar document issued by government, by another state, or by the United States."

[3] The date of the offense proved at trial was thus somewhat different from the date of the offense alleged in the indictment.

The trial court assessed his punishment at imprisonment for five years.

On direct appeal, Ramos argued that the evidence adduced at his trial had been legally insufficient to support his conviction for felony forgery of a government instrument. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981) (discussing the law of legal sufficiency). Ramos also argued that the trial court had erred in failing to instruct the jury that the term "instrument" as used in the definition of the felony forgery offense meant "negotiable instrument."[4] The court of appeals rejected Ramos's arguments and affirmed the judgment of the trial court. *Ramos v. State*, 264 S.W.3d 743, 747-753 (Tex.App.–Houston [1st Dist.] 2008).

Ramos later filed a petition for discretionary review asserting three grounds for review, all of which we granted. *See* Tex. R. App. Proc. 66.3(d). In his first two grounds for review, Ramos argues that the court of appeals misconstrued the term "instrument" as used in Texas Penal Code § 32.21(e)(3), the felony forgery statute, to encompass a Social Security card and that, because of that misconstruction, the court of appeals erroneously held the evidence legally sufficient to support his conviction. More specifically, Ramos, in his first two grounds, argues that: (1) Texas Government Code § 311.011(b) requires that statutory terms that have an acquired technical meaning must be construed accordingly; (2) the term "instrument" as used in the felony forgery statute has an acquired

---

[4] It appears that during the pendency of Ramos's direct appeal, the federal government deported him from the United States. *See Ramos v. State*, 264 S.W.3d 743, 746 (Tex.App.–Houston [1st Dist.] 2008) (noting the deportation). The record reflects that after his deportation, Ramos continued to prosecute his appeal. It might be argued that Ramos's deportation mooted his appeal or otherwise affected his right to appeal. The State has never advanced such arguments, however, and we did not grant review to consider them. *But see Cuellar v. State*, 13 S.W.3d 449, 451-52 (Tex.App.–Corpus Christi 2000, no pet.) ("An appellant who complies with the rules of appellate procedure should not lose his right to appeal when he is expelled from the country and is legally unable to return to the custody of the State, particularly when the conviction affects his right to reenter the country at a later date.").

technical meaning, originating in Texas Business and Commerce Code § 9.102(47), and that meaning is "negotiable instrument," which does not encompass a Social Security card; (3) the dictionary itself defines "instrument" as "a writing that comprises the formal expression of a legal act or is otherwise negotiable," and that definition also does not encompass a Social Security card; (4) in the original version of the felony forgery statute, enacted in 1973, the term "instrument" "carried a narrow meaning as the provision described a discreet [sic] category of writings that [were] negotiable"; (6) in 1991, "the forgery statute was amended to add a category of certain types of government records, but the . . . mere insertion of an additional category of writings should not be interpreted so as to broaden the original meaning of the term 'instrument'"; (7) "if the term 'instrument' were meant to have a broad definition so as to include any document generated by the government, there would be no purpose in the Legislature's careful specification [of] the various types of government documents [the forgery of] which constitute[s] [a] third degree felony"; and (8) "[t]here was no evidence at trial that a social security card is a 'government instrument.'"

In his third ground for review, Ramos argues that the court of appeals erred in holding that the trial court did not err in failing to instruct the jury that the term "instrument" as used in the felony forgery statute meant "negotiable instrument." Ramos argues further that "the term 'instrument'[as used in the felony forgery statute] is a term of art that has acquired a technical legal meaning and therefore should have been defined [for the jury] with its technical legal meaning."

We turn first to Ramos's first two grounds for review. In those grounds, Ramos argues in effect that Texas Penal Code § 32.21(e)(3), the felony forgery provision under which he was indicted and convicted, does not cover the forgery of a Social Security card and that, therefore, the evidence adduced at his trial was legally insufficient to support his conviction. *See* footnote two, *supra*. This

argument requires us to construe the phrase "other instruments issued by a state or national government or by a subdivision of either" as used in § 32.21(e)(3) and determine whether that statutory language encompasses a Social Security card.

Statutory construction is a question of law, and our review is *de novo*. *Williams v. State*, 253 S.W.3d 673, 677 (Tex.Crim.App. 2008). When construing a statutory provision, our constitutional obligation is to attempt to discern the fair, objective meaning of that provision at the time of its enactment. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). When attempting to discern that fair, objective meaning, we may consult standard dictionaries. *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex.Crim.App. 2004).

When we construe a statute that, like § 32.21(e), has been amended, we must construe it as if it had been originally enacted in its amended form.[5] *United States v. Franca*, 282 U.S. 568, 576 (1931); *Blair v. Chicago*, 201 U.S. 400, 475 (1906); *Schlichting v. Texas Bd. of Med. Exam*., 310 S.W.2d 557, 563 (Tex.1958); N. Singer & J. Singer, *Statutes and Statutory Construction* § 22:35 (7th ed. 2009); 82 C.J.S. *Statutes* § 373 (1999).[6] We must take the amended statute as it reads today,

---

[5] Texas Penal Code § 32.21(e), enacted in 1973, originally read as follows:

"(e) An offense under this section is a felony of the second degree if the writing is or purports to be part of an issue of money, securities, postage or revenue stamps, or other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person." Acts 1973, 63rd Leg., p. 883, ch. 399, § 1.

The Legislature later amended § 32.21(e) to read as it does today.

[6] According to 82 C.J.S. *Statutes* § 373 (1999):

"An amended act is ordinarily construed as if the original statute had been

(continued...)

mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions. 82 C.J.S. *Statutes* § 373 (1999).

If we conclude that the meaning of the statutory provision in question is plain, then we give effect to that plain meaning, as long as it does not lead to an absurd result. *Boykin v. State*, 818 S.W.2d at 785. Finally, statutory terms not legislatively defined are generally construed as common usage allows, but terms that have an acquired technical meaning are generally construed in their technical sense. *Medford v. State*, 13 S.W.3d 769, 771-772 (Tex.Crim.App. 2000).

As we noted previously, Ramos's argument requires us to construe § 32.21(e)(3)'s phrase "other instruments issued by a state or national government or by a subdivision of either." In order to do that, we must first construe the term "instrument." "Instrument" is not defined in the Penal Code, but does that term nevertheless have an acquired technical meaning? Ramos argues that it has the technical meaning assigned by Texas Business and Commerce Code § 9.102(47), i.e., that the term "instrument" as used in § 32.21(e)(3) means "negotiable instrument." We are not persuaded. The fact that the term "instrument" means "negotiable instrument" in the Business and Commerce Code does not require that term to have the same meaning in the Penal Code. The two codes are, by and large, unrelated. Furthermore, read in context, the term "instrument" as used in § 32.21(e)(3) does not appear to be limited to negotiable instruments. Subsection (e)(3)'s use of the phrase "other instruments" implies that the items listed in subsections (e)(1) and (e)(2) are also "instruments," and

---

[6](...continued)
repealed, and a new and independent act in the amended form had been adopted in its place. As far as any action after the adoption of the amendment is concerned, it is as if the statute had been originally enacted in its amended form. The amendment becomes a part of the original statute as if it had always been contained therein."

many of those listed items are not negotiable instruments. In short, our reading of § 32.21(e) leads us to conclude that the Legislature intended to punish as a third-degree felony the forgery of any "instrument" issued by government, regardless of whether that "instrument" was negotiable. Such a reading would not appear to lead to an absurd result.

If the term "instrument" as used in § 32.21(e)(3) does not have an acquired technical meaning, then what meaning does common usage allow? The Oxford English Dictionary defines "instrument" in pertinent part as "a formal legal document whereby a right is created or confirmed, or a fact recorded; a formal writing of any kind, as an agreement, deed, charter, or record, drawn up and executed in technical form, so as to be of legal validity." *Oxford English Dictionary – Compact Edition*, vol. I, p. 1453 (1971). The O.E.D. defines "document," in turn, as "something written, inscribed, etc., which furnishes evidence or information upon any subject." *Id*., vol. I, p. 781. And the O.E.D. defines "writing" as "that which is in written (now also typewritten) state or form." *Id*., vol. II, p. 3842.

Given these dictionary definitions, we conclude that in common usage, the term "instrument" is broad enough to encompass a Social Security card and, therefore, that the phrase "other instruments issued by a state or national government or by a subdivision of either," as used in Texas Penal Code § 32.21(e)(3), also encompasses a Social Security card. We overrule Ramos's first two grounds for review.

We turn next to Ramos's third ground for review, in which he argues that the court of appeals erred in holding that the trial court did not err in failing to instruct the jury that the term "instrument" as used in the felony forgery statute meant "negotiable instrument." As we noted previously, Ramos argues further that "the term 'instrument'[as used in the felony forgery statute] is a term of art that

RAMOS--9

has acquired a technical legal meaning and therefore should have been defined [for the jury] with its technical legal meaning."

"As a general rule, terms need not be defined in the [jury] charge if they are not statutorily defined. But terms which have a technical legal meaning may need to be defined." *Middleton v. State*, 125 S.W.3d 450, 454 (Tex.Crim.App. 2003). The term "instrument" as used in § 32.21(e)(3) does not have a statutory definition or a technical legal meaning. Therefore, the court of appeals did not err in holding that the trial court did not err in failing to define the term for the jury. We overrule Ramos's third ground for review.

We affirm the judgment of the court of appeals.


DELIVERED NOVEMBER 18, 2009

PUBLISH