NO. 07-11-0275-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 22, 2012

_____

ROBERT JULIAN YOUNG,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-11-904024; HONORABLE BOB PERKINS, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Robert Julian Young was convicted of tampering with a governmental record. He claims error in 1) the trial court failing to quash the indictment, 2) the sufficiency of the evidence to prove his intent to defraud or harm, 3) the trial court failing to specify a particular government record in the application paragraph of the jury charge, and 4) the trial court defining the term "defraud" in the jury charge. We affirm the judgment.

*Background*

Appellant, a peace officer at the time of this offense, had been injured on the job on January 14, 2007. He applied for financial assistance from the Crime Victim's Compensation Program of the Attorney General's Office. This was the second time appellant had been injured in the line of duty, and he had submitted a similar application in 2003 and eventually received $50,000 for loss of income from off-duty jobs.

As a supplement to the 2007 application, appellant submitted a document listing fourteen off-duty employers for which he was seeking compensation. Helen Reyes-Salinas, the case manager, was unable to verify that appellant was an employee of several of those listed. Particularly, appellant claimed to be employed by the Towne Plaza Apartments in Houston with lost wages of $9,750. Appellant faxed to Reyes-Salinas a letter dated September 30, 2007, from the Towne Plaza Apartments stating that, due to injury, he could not perform his duties as a courtesy (or security) officer since January 2007. The letter was signed by appellant's wife Sunny Young,[1] who was hired to work as apartment manager there in June 2007. However, other representatives from Towne Plaza Apartments reported that appellant had never worked there as the courtesy officer.[2] One such representative testified that 1) apartment managers must have approval to hire a security officer, particularly if it was a spouse, 2) the verification letter sent by Towne Plaza Apartments was not of the type

---

[1]With respect to appellant's 2003 application, Reyes-Salinas had received a letter from the Ironwoods Apartments verifying his off-duty employment which was also signed by Sunny Joyner, who later became Sunny Young.

[2]The evidence showed that appellant received a one-time payment in the amount of $157.50 in 2008 from Towne Plaza Apartments when he was hired with some other officers to provide security for a certain number of hours due to threats made against appellant's wife.

the company would have sent and it would have come from the corporate office, and 3) the courtesy officer during 2007 was Steve Williams, who received free rent as compensation. Appellant was charged with tampering with a governmental record as a result.

*Issue 1 – Motion to Quash the Indictment*

First, appellant claims error on the part of the trial court in failing to grant his motion to quash the indictment. We overrrule the issue.

The indictment charged that appellant "on or about the 6[th] day of September, A.D., 2007, and before the presentment of this indictment, . . . with intent to defraud or harm another, namely, the State of Texas and the Office of the Texas Attorney General, Crime Victims' Compensation Division, made, presented, and used a governmental record, to wit: he submitted or caused to be submitted an addendum or supplement to an 'Application Form for the Texas Crime Victims' Compensation Benefits' containing false information concerning his off-duty employment, and the defendant made, presented, and used the said governmental record with knowledge of its falsity."[3] At a

---

[3]There were two other paragraphs in the indictment which the State waived during trial. They include the charges that appellant "with intent to defraud or harm another . . . knowingly made a false entry in or false alteration of a governmental record, to-wit: he submitted or caused to be submitted an addendum or supplement to an 'Application Form for Texas Crime Victims' Compensation Benefits,' and the aforesaid addendum or supplement contained false information concerning his off-duty employment" and that appellant "with intent to defraud or harm another, . . . made, presented, or used a record, document, or thing, to-wit: submitted or caused to be submitted an addendum or supplement to an 'Application Form for Texas Crime Victims' Compensation Benefits,' which contained false information concerning off-duty employment, and the defendant made, presented and used the said record, document or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record."

pretrial hearing, appellant argued that the indictment failed to give him notice of the specific false entries he allegedly made in the document referenced in the indictment.[4]

The sufficiency of an indictment is a question of law which we review *de novo. State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). The indictment must be specific enough to inform the defendant of the accusations against him so he may prepare a defense. *Id.* An indictment that tracks the statutory language satisfies constitutional requirements, and the State need not allege facts that are merely evidentiary in nature. *State v. Mays,* 967 S.W.2d 404, 406 (Tex. Crim. App. 1998). Moreover, the due process requirement may be satisfied by means other than the language in the charging instrument. *Smith v. State,* 297 S.W.3d 260, 267 (Tex. Crim. App. 2009), *cert. denied,* __ U.S. __, 130 S.Ct. 1689, 176 L.Ed.2d 186 (2010).

The statutory language for these offenses is that a person 1) "knowingly makes a false entry in, or false alteration of, a government record," 2) "makes, presents, or uses any record, document or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record," and 3) "makes, presents, or uses a governmental record with knowledge of its falsity." TEX. PENAL CODE ANN. §37.10(a)(1), (2) & (5) (West 2011). The indictment tracked the statutory language and identified the document which was the subject of the indictment. Moreover, in its Notice of Intent to Introduce Evidence of Extraneous Offenses, the State noticed eight of the jobs listed by appellant on that document which it intended to introduce into evidence at trial. Next to

---

[4]Appellant also filed a motion to designate the primary offense. During a pretrial hearing, he informed the court that the motion had been adequately addressed by the State orally informing him and the court that it intended to prove the allegedly false information with respect to the Towne Plaza Apartments job at trial.

the first one, the Towne Plaza Apartments, the State indicated that it was "the subject of the indictment." Additionally, at the pretrial hearing, the State informed appellant and the court that the job information with respect to the Towne Plaza Apartments was the one the State intended to prove up as the offense at trial. When a motion to quash is overruled, the defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend. *Smith v. State,* 297 S.W.3d at 267. Here, appellant had actual notice of the specific act of falsification which the State intended to prove at trial as the subject of the offense. Therefore, appellant's substantial rights were not affected even if error occurred. *See id.*

*Issue 2 – Sufficiency of the Evidence*

In his second issue, appellant claims the evidence is insufficient to prove that he intended to defraud or harm the State of Texas. We overrule the issue.

We review a challenge to the sufficiency of the evidence under the standard discussed in *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010). Furthermore, intent may be inferred from the words, acts, or conduct of the accused. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Appellant argues the evidence is insufficient because his 2007 application for benefits indicated that he was not self-employed at the time of the injury and that he was never shown to have completed a lost wage affirmation form as required. So, he allegedly was not in a position to harm or defraud the government. While this was some evidence which the jury was entitled to consider, there was also evidence that 1) when appellant learned there was a $50,000 cap on the benefits he was entitled to in 2003, he applied for catastrophic benefits which are for persons permanently disabled

5

and for which he did not qualify, 2) with respect to his 2003 claim, he submitted a letter from an apartment complex to verify his off-duty employment which was signed by Sunny, who he would later marry, 3) appellant listed fourteen off-duty employers for purposes of his 2007 application which seemed unusual to Reyes-Salinas because most full-time police officers do not have time to maintain that many off-duty positions, 4) Reyes-Salinas received responses from some of the other listed employers that appellant was not employed by them, 5) appellant asserted that he would have $9,750 in lost wages from the Towne Plaza apartments in 2007 when he had never worked there before or during 2007 and another officer was the courtesy officer at those apartments in 2007 and received free rent as compensation, 6) appellant's wife became the apartment manager at the Towne Plaza Apartments and signed a letter provided to Reyes-Salinas which stated that "[a]s a courtesy officer Robert Young would receive $1,120 monthly" and that "[d]ue to the nature of his injuries he has been unable to perform the duties required to retain his position as courtesy officer since January 2007," 7) that letter did not come from the corporate office as it would have if it was genuine and authorized, 8) Sunny had no authority to hire a courtesy officer without approval, which there is no evidence she had, 9) appellant sent another letter regarding the Towne Plaza Apartments in which he stated he had no written contract but his services would supplement his rent requirements, 10) income which appellant was entitled to seek compensation for had to "be regular" and "consistent," and had to be current employers at the time appellant was injured, 11) appellant was familiar with the application and verification process because he had previously submitted an application, and 12) the purpose of listing appellant's off-duty employment was to

6

receive compensation from the State of Texas. This constitutes some evidence which, when viewed in the light most favorable to the verdict, would permit the jury to find that appellant intended to obtain money from the State of Texas by providing false information. *See Tottenham v. State,* 285 S.W.3d 19, 28 (Tex. App. –Houston [1st Dist.] 2009, pet. ref'd) (finding that circumstantial evidence existed that the defendant was aware of the falsity of certain documents when the certificates were apparently altered to indicate the completion of courses that appellant did not attend on the dates named, the courses were not conducted on the dates named, appellant could not have been enrolled because they were not offered at that time to law enforcement personnel outside of Galveston County Sheriff's deputies, the certificates were produced under threat of removal from office without proof of completion of the courses, and the defendant made statements indicating he had completed the courses).

*Issue 3 – Jury Charge – Application Paragraph*

Appellant next contends that the jury charge was erroneous in the same manner as the indictment, that is, it failed to specify a particular government record or document in the application paragraph. We overrule the issue.

The charge tracked the language of the indictment and instructed the jury it could find appellant guilty if it believed beyond a reasonable doubt that he "on or about the 6th day of September, 2007 . . . did then and there, with intent to defraud or harm another, namely, the State of Texas and the Office of the Texas Attorney General, Crime Victims' Compensation Division, made, presented or used a governmental record, to-wit: an addendum or supplement to an 'Application Form for Texas Crime Victims' Compensation Benefits' containing false information concerning his off-duty

7

employment, and the defendant made, presented, or used the said governmental record with knowledge of its falsity." Although appellant orignally requested that a specific document be referenced in the charge so that the jury did not focus on the 2003 application, he offered no requested instruction and, after a discussion with the court and in response to the question whether the defense had "any objections, deletions, substitutions or additions that need to be made to the charge," appellant replied negatively.

Even if there was error in the charge, appellant would have to show that he was egregiously harmed by it. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In determining whether such has occurred, we consider the entire jury charge, the contested issues as well as the weight of the probative evidence, the attorneys' arguments, and any other relevant information. *Ovalle v. State,* 13 S.W.3d 774, 786 (Tex. Crim. App. 2000). Given the evidence offered at trial and the State's arguments, all of which focused on appellant's claim that he worked at the Towne Plaza Apartments as contained in the supplement to his application, we fail to see how appellant was harmed.

*Issue 4 – Jury Charge Definition*

Finally, appellant claims error on the part of the trial court in defining the word "defraud" in the jury charge to mean "to practice fraud; to cheat or trick" which the trial court took from Black's Law Dictionary. We overrule the issue.

A trial court generally has broad discretion in submitting instructions to the jury. *Roise v. State,* 7 S.W.3d 225, 242 (Tex. App.–Austin 1999, pet. ref'd). Terms need not be defined in the jury charge unless they are statutorily defined or have a technical legal

8

meaning. *Ramos v. State,* 303 S.W.3d 302, 308 (Tex. Crim. App. 2009). Jurors may understand undefined terms to have any meaning that is acceptable in common parlance. *Grotti v. State,* 273 S.W.3d 273, 281 (Tex. Crim. App. 2008). Yet, in *Kirsch v. State,* 357 S.W.3d 645 (Tex. Crim. App. 2012), the Court of Criminal Appeals found error on the part of the trial court in defining the undefined term "operate" to mean "to exert personal effort to cause the vehicle to function" because although the definition was appropriate in assessing the sufficiency of the evidence to support that element, such an instruction to the jury "impermissibly guided their understanding of the term" and "improperly focus[ed] the jury on the type of evidence that would support a finding that appellant was operating his motorcycle." *Id.* at 651-52. While we are not necessarily convinced that the same is true with the trial court's definition of defraud in this instance, we will assume *arguendo* that it is, and review the record for harm.

Appellant claims he was harmed by the definition because the trial court gave a definition "wholly inapplicable to the case which substantially reduced the State's burden of proof." At trial, appellant did not object to the trial court giving a definition but suggested a definition of "misrepresentation of a material act made with intent to deceive upon which someone relies resulting in harm." When the court rejected that definition, appellant responded, ". . . I object to you overruling when I don't make an objection." Because we construe this to mean no objection was proffered, we review the record for egregious harm per *Almanza.*

Again, the jury was instructed that it could find appellant guilty if, with the intent to defraud *or harm* another, he made, presented or used a government record with knowledge of its falsity. Harm was defined as "anything reasonably regarded as loss,

9

disadvantage, or injury." Thus, any intent to obtain money to which appellant was not otherwise entitled by submission of a false document would have enabled the jury to find appellant guilty. In argument, the State represented that appellant's claim was "blatantly fraudulent" and "not an inadvertent slip."[5] Appellant also contended in argument that the issue was whether he "intend[ed] to take the money from the State of Texas." We do not see how the definition provided by the trial court, even if relied upon by the jury, resulted in an unfair trial.

Accordingly, the judgment is affirmed.

Per Curiam

Do not publish.

---

[5]Appellant claims the State told the jury in closing argument that it didn't have to prove intent to harm or defraud. When taken in context, it is clear that the State is arguing that it didn't have to prove that it had been harmed or defrauded by actually paying compensation benefits to appellant to which he was not entitled.