

# In the Court of Criminal Appeals of Texas

Nos. PD-0018-22 & PD-0019-22

THE STATE OF TEXAS

v.

SEBASTIAN TORRES,

*Appellee*

On State's Petition for Discretionary Review
From the Thirteenth Court of Appeals
Hidalgo County

YEARY, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, RICHARDSON, KEEL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. KELLER, P.J., filed a concurring opinion in which HERVEY, J., joined. NEWELL, J., filed a concurring opinion.

When Appellee was sixteen years old, he was brought before a

magistrate and read his statutory *Miranda* warnings.[1] As magistrates are empowered to do under Section 51.095(f) of the Texas Family Code, the magistrate requested that law enforcement officers return Appellee and the video recording of Appellee's interview to the magistrate at the conclusion of questioning. TEX. FAM. CODE § 51.095(f).[2] The magistrate made this request so that he could determine whether any statements Appellee gave during interrogation were voluntary. However, following interrogation, the officers did not comply with the magistrate's request. Appellee was never returned, and the magistrate never made a determination, one way or the other, whether Appellee's statements were given voluntarily.

A few months after Appellee's interview with law enforcement, a juvenile court transferred Appellee's case to the appropriate district

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] In its entirety, Section 51.095(f) of the Texas Family Code reads:

> (f) A magistrate who provides the warnings required by Subsection (a)(5) for a recorded statement may at the time the warnings are provided request by speaking on the recording that the officer return the child and the recording to the magistrate at the conclusion of the process of questioning. The magistrate may then view the recording with the child or have the child view the recording to enable the magistrate to determine whether the child's statements were given voluntarily. The magistrate's determination of voluntariness shall be reduced to writing and signed and dated by the magistrate. If a magistrate uses the procedure described by this subsection, a child's statement is not admissible unless the magistrate determines that the statement was given voluntarily.

TEX. FAM. CODE § 51.095(f).

court for adult criminal proceedings. Appellee filed a pretrial motion to suppress his recorded statements. He argued that since the magistrate did not ultimately make a determination whether the statements were given voluntarily, the statements were inadmissible under Section 51.095(f) of the Texas Family Code. The trial court granted Appellee's motion to suppress, and the State took an interlocutory appeal. *See* TEX. CODE CRIM. PRO. art. 44.01(a)(5) (allowing the State to appeal an order of a court in a criminal case if the order grants a motion to suppress evidence).

Today, we must decide whether the court of appeals erred to agree with the trial court that Appellee's statements were inadmissible under Section 51.095(f). To answer this question, we must construe the meaning of Section 51.095(f); what does it mean for a magistrate to "use" the procedure described by Subsection (f)? Specifically, did the magistrate in this case "use" the procedure by requesting that Appellee be returned to him, even though the magistrate did not ultimately make a determination, one way or the other, whether the statements were given voluntarily?

For the reasons expressed below, we conclude that the magistrate did "use" the procedure within the meaning of Section 51.095(f). Accordingly, since the magistrate has not determined that Appellee's statements were given voluntarily, Appellee's statements are inadmissible under Section 51.095(f).

## I. BACKGROUND

In August of 2017, Starr County Investigator Ociel Mendoza and Texas Ranger Eric Lopez were working together on an investigation into

the suspected murder of a missing seventeen-year-old. Their investigation identified sixteen-year-old Appellee as a suspect. On August 11, 2017, Mendoza and Lopez drove to Appellee's residence. They asked Appellee if he would be willing to accompany them back to the sheriff's office to answer questions, and Appellee agreed. Upon arriving at the sheriff's office around 8:00 p.m., the officers took Appellee to Magistrate Jesus Barrera. On a video recording, Barrera admonished Appellee using a form provided by the sheriff's office. After reading aloud all the statutorily required warnings and marking each administered warning with a checkmark, Barrera reached a section of the warning form labelled: **"OPTIONAL DIRECTIVE: APPLICABLE ONLY TO RECORDED STATEMENTS."** Barrera chose to invoke this optional part of the form, indicating his choice with a checkmark and reading the following statement aloud to Appellee on the video recording:

> Pursuant to Section 51.095(f), Family Code, I am requesting that the officer return you and the recording of your statement to me at the conclusion of the process of questioning so that I can determine whether it was given voluntarily.

After this admonishment, Appellee declined to waive his rights and refused to answer questions. Shortly after 8:13 p.m., as indicated by Barrera on the warning form, Appellee was placed under arrest and transported to a juvenile detention center.

About four hours later, Barrera received a phone call from a Starr County assistant district attorney. The attorney told Barrera that Appellee had changed his mind and now wanted to talk. No one provided

Barrera with an explanation for Appellee's change of heart. Barrera returned to the sheriff's office and, at 12:23 a.m., he proceeded to repeat the same admonishment process with Appellee, using a fresh statutory warning form. Again, after reading all the required warnings, Barrera reached the "Optional Directive" box. Again, he opted to implement the extra protection offered by Section 51.095(f) for recorded oral statements given by juveniles. He placed a checkmark in the box and again read aloud that he was requesting the officers to return Appellee to him at the conclusion of questioning, pursuant to Section 51.095(f). This time, Appellee waived his rights and agreed to answer questions.

Barrera left Appellee but remained at the sheriff's office to wait for the officers to return Appellee and the recording to him after the interrogation. Appellee was then interrogated by Starr County Investigator Dario Marquez and Rio Grande City Police Department Investigator Humberto Vela. The first part of the interrogation took place at the sheriff's office and lasted for about two hours. The second part of the interrogation took place at the scene of the murder under investigation and lasted for about one hour. During the interrogation, Appellee made various statements revealing that the body of the murder victim would be found at a specific location, under some bushes, cut up into pieces and placed inside plastic bags.

Once the interrogation concluded, the officers brought Appellee back to the sheriff's office. At this point, over four hours since the second admonishment and Barrera's second Section 51.095(f) request, Barrera was still present at the sheriff's office. Barrera maintained that he had waited for all that time for the specific purpose "to be called . . . to go

over [the recording]." But Barrera was not rewarded for his patience. Even while Appellee was briefly in the same building as Barrera, law enforcement never returned Appellee or the recording of his statements to Barrera. Instead, the officers placed Appellee in handcuffs and transported him from the sheriff's office back to the juvenile detention center. Ultimately, Barrera never viewed the recording; nor did he make a determination, one way or the other, whether Appellee gave his statements voluntarily.

Months later, Appellee's juvenile case was transferred to a Starr County district court for Appellee to be tried as an adult in a criminal proceeding. Appellee was then charged by indictment with murder, tampering with a human corpse, and tampering with physical evidence. TEX. PENAL CODE §§ 19.02(b)(1), 37.09(c), 37.09(d)(1). After a change of venue to Hidalgo County, Appellee filed a motion to suppress his recorded statements made during the interrogation conducted at the sheriff's office and the alleged crime scene. The trial court granted the motion, concluding that "[t]he magistrate invoked but the law enforcement officers did not comply with the plain language of Sec. 51.095(f), Texas Family Code." Trial Court's Findings of Fact and Conclusions of Law at 4. Consequently, the trial court concluded, "both statements became inadmissible under the statute and at this time will be suppressed for this trial." *Id.* The court of appeals affirmed, reasoning that while "the magistrate does have the initial discretion to decide whether to follow the procedure set forth in § 51.095(f)[,] once the magistrate decides to follow the procedure, the statute explicitly makes admissibility conditional on the magistrate's finding of voluntariness."

*State v. Torres*, 639 S.W.3d 791, 799 (Tex. App.—Corpus Christi–
Edinburg 2021).

We granted the State's petition for discretionary review to
determine whether a juvenile's recorded statements to police are
inadmissible under Section 51.095(f) if a magistrate makes the initial
request for officers to return the juvenile and the recording to the
magistrate at the conclusion of questioning, but the magistrate never in
fact makes a determination whether the statements were given
voluntarily. The State's position is that a magistrate does not "use" the
procedure in Section 51.095(f)—thus triggering the provision's
exclusionary rule—unless and until the magistrate completes a signed,
written determination of whether the recorded statements were
voluntary.[3]

We disagree with the State. In this case, the reason that Barrera
did not ultimately make a determination whether Appellee's statements
were voluntary was not because *Barrera* did not initiate the procedure.
Rather, Barrera did not make a determination because the *officers* did
not comply with Barrera's *request*. For this reason, we agree with the
court of appeals that Barrera "use[d]" the procedure described by Section
51.095(f) through his unrevoked request. And since Barrera "use[d]" the
procedure but never made a determination that the statements were

---

[3] The "exclusionary rule" in Section 51.095(f) is found in the last
sentence of the subsection, which lays out the conditional statement: "*If* a
magistrate uses the procedure described by this subsection, a child's statement
is not admissible *unless* the magistrate determines that the statement was
given voluntarily." TEX. FAM. CODE § 51.095(f) (emphasis added). All
references in this opinion to the "exclusionary rule" of Section 51.095(f) refers
to this sentence in Subsection (f).

made voluntarily, the statements are inadmissible under Section 51.095(f). Accordingly, we affirm the court of appeals' judgment.

## II. STANDARD OF REVIEW

As the court of appeals correctly noted, we review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard of review. *Torres*, 639 S.W.3d at 796 (citing *Wells v. State*, 611 S.W.3d 396, 405 (Tex. Crim. App. 2020)). On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do *not* turn on an assessment of credibility and demeanor, on a de novo basis. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008); *Crain*, 499 S.W.3d at 48. Statutory construction is a pure question of law. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). Accordingly, we review questions of statutory construction on a de novo, non-deferential basis. *Id*. This case turns on a construction of the statutory language "[i]f a magistrate uses the procedure" in Section 51.095(f), so as to trigger the exclusionary rule. So, we turn to a de novo review now.

## III. ANALYSIS
## A. Section 51.095(f)

Appellee was a "child" as defined by Title 3 of the Texas Family Code at the time that he made the statements suppressed by the trial

court. *See* TEX. FAM. CODE § 51.02 (2)(A) ("'Child' means a person who is
. . . ten years of age or older and under 17 years of age[.]"). Accordingly,
even though his juvenile case was ultimately transferred to a district
court to try him as an adult in a criminal proceeding, Section 51.095,
entitled "Admissibility of a Statement of a Child," governs the
admissibility of Appellee's statements. *See Griffin v. State*, 765 S.W.2d
422, 427 (Tex. Crim. App. 1989) ("[I]ssues involving substantive rights
of pretransfer juveniles, such as legality of detention or a confession,
though raised in the criminal forum, shall be controlled by applicable
provisions of the Family Code."); *Vega v. State*, 84 S.W.3d 613, 616 (Tex.
Crim. App. 2002) ("[I]t is Title 3 [of the Texas Family Code] that controls
issues concerning juvenile confessions, not [Article] 38.22.").

Section 51.095 of the Texas Family Code has a series of
subsections, each applicable depending on the type of statement the
juvenile makes. For example, Subsection (a)(1) applies when a
"statement is made in writing." TEX. FAM. CODE § 51.095(a)(1). A
different subsection applies when a juvenile makes an oral statement—
Subsection (a)(5). TEX. FAM. CODE § 51.095(a)(5). Another subsection—
Subsection (f)—becomes applicable only for some oral statements made
by juveniles. Subsection (f) provides that:

> A magistrate who provides the warnings required by
> Subsection (a)(5) for a recorded statement may at the time
> the warnings are provided request by speaking on the
> recording that the officer return the child and the recording
> to the magistrate at the conclusion of the process of
> questioning. The magistrate may then view the recording
> with the child or have the child view the recording to enable
> the magistrate to determine whether the child's
> statements were given voluntarily. The magistrate's

determination of voluntariness shall be reduced to writing and signed and dated by the magistrate. If a magistrate uses the procedure described by this subsection, a child's statement is not admissible unless the magistrate determines that the statement was given voluntarily.

TEX. FAM. CODE § 51.095(f). It is uncontested that Subsection (f) applies to the statements in this case.

Applying the literal language of Subsection (f) to Appellee's suppressed statements, it is undisputed that Barrera chose to "request by speaking on the recording that the officer return [Appellee] and the recording to [Barrera] at the conclusion of the process of questioning." *Id.* Barrera's resolute desire that Appellee and the recording be returned to him is underscored by the fact that he made the request *twice*, once before Appellee refused to waive his rights and again when Appellee later agreed to speak. It is also undisputed that, despite this request, the officers did not "return [Appellee] and the recording to [Barrera] at the conclusion of the process of questioning." *Id.*

Barrera never "view[ed] the recording with [Appellee] and did not have [Appellee] view the recording." *Id.* And ultimately, Barrera never (at all, much less in writing) "determine[d] that the statement was given voluntarily." *Id.* In other words, it is undisputed that the "unless" clause in the conditional last sentence of Section 51.095(f) was not satisfied. Therefore, what *is* disputed is whether the "if" clause, which triggers the unmet "unless" clause, was satisfied as well. That is to say, did Barrera "use[]" the procedure, so as to trigger the exclusionary rule?

### B. Statutory Construction: What does it mean for a magistrate to "use" the procedure in Section 51.095(f)?

In attempting to discern the plain meaning of "uses" in Subsection (f), the State cities standard dictionary definitions. State's Petition for Discretionary Review at 4; State's Brief on the Merits at 9 n.23.[4] This is

---

[4] Before addressing the merits of the State's statutory construction argument, we should acknowledge Appellee's contention that the State has forfeited its argument. *See* Respondent's Reply to State's Petition for Discretionary Review at 2 (arguing that the State's failure to make its specific statutory construction argument in the trial court violates Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103) (citing TEX. R. APP. P. 33.1 and TEX. R. EVID. 103); Appellee's Amended Reply Brief to the State's Brief on the Merits at 18. Appellee asserts that this is the first time the State has presented an argument for admissibility premised on the statutory construction of Subsection (f)—and specifically of the word "uses." Since the State is the appellant in this case, Appellee is correct that this Court should not consider State arguments if they were not first made in front of the trial court. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (explaining that the party who loses at trial and then complains on appeal, the appellant, has the responsibility for making its precise complaint to the trial court and not for the first time on appeal); *see also State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (clarifying that appellate rules of preservation do not discriminate whether the complaining party is the State or the defendant and that "[o]rdinary notions of procedural default should apply equally to the defendant and the State"). But we disagree with Appellee's contention that the State's argument before this Court is new.

At trial and on appeal, the State focused on the repeated use of the word "may" in Subsection (f) and argued that Barrera had discretion whether or not to ultimately make a voluntariness determination. Since Barrera was not required to make a determination one way or the other, according to the State, the fact that Barrera did not make a determination did not make Appellee's statements inadmissible under Subsection (f). Instead of simply pointing to the discretionary "may" language in Subsection (f), the State now focuses its argument for admissibility specifically on the meaning of the statutory phrase "uses the procedure." But the reason for this change in focus is that the court of appeals based its analysis of the State's argument on appeal on the meaning of the "uses the procedure" phrase. To respond to the State's argument, the court of appeals started by narrowing the focus of its analysis. It declared that "the sole question presented in these appeals is: Did Barrera 'use[] the procedure described by' § 51.0959(f)?" *Torres*, 639 S.W.3d at 798. Then, the court of appeals went on to conduct a statutory construction analysis of that key phrase. *Id.* at 798–99.

appropriate, since the verb "uses" is not defined by the statute and has not acquired a technical meaning to which we must defer. *See Ramos*, 303 S.W.3d at 307. After presenting the standard dictionary definitions of the verb "use," the State contends that "[t]hese meanings suggest something is accomplished through use." State's Petition for Discretionary Review at 4. Therefore, the State argues, the definitions of "use" clearly show that "what it means to 'use' the procedure" in Subsection (f) is to use completely. State's Reply Brief at 9. The procedure in Subsection (f), according to the State, is made up of a series of steps, from the initial request by the magistrate all the way down to the signed, written determination whether the statements were made voluntarily. And, according to the State, each step must be completed before it can be said that the magistrate "use[d]" the procedure and thus triggered the exclusionary rule. *See* State's Brief on the Merits at 8 ("Read together, these sentences [in Subsection f] present a three-step procedure that must be used completely to achieve inadmissibility.").

The dictionary definitions that the State provides, however, simply do not clearly favor its position. On the contrary, the definitions are broad and easily malleable, and may either support or contradict the

---

For this reason, it is inaccurate to say that the State is presenting a new argument. Rather, it is making the same argument against inadmissibility that it has been making since arguing before the trial court. The difference is that the State has simply "gussied [its argument] up." *See Clarke v. State*, 270 S.W.3d 573, 583 (Tex. Crim. App. 2008) (holding that the appellant had preserved his *Brady* claim for appellate review, even though he did not specifically cite *Brady v. Maryland*, 373 U.S. 83 (1963), in his motion for new trial). The State is necessarily reiterating its original argument while also responding to the way in which the court of appeals rejected it. Accordingly, we review the merits of the State's argument in this opinion.

State's construction of the verb "use." On the one hand, for example, certain definitions of "use" offered by the State seem to favor its argument that "use" in Subsection (f) does mean *complete* use. If "use" means "to carry out a purpose," then it makes some sense to argue that one cannot "use" the procedure until Subsection (f)'s purpose—securing a voluntariness determination by the magistrate—is "carried out," i.e., completed.[5]

On the other hand, another definition of the verb "use" that the State itself provides is to "put into service or action."[6] In contradiction of the State's argued-for construction of "uses," a person can certainly "put *into* service" a procedure with multiple steps by completing just the first step and thus initiating the action. A similar interpretation applies when one plugs in another one of the State's provided definitions—"to employ for some purpose."[7] Employing a procedure *for* a purpose implies that the purpose of the procedure does not necessarily have yet to be completed for a party to "use" the procedure.

In any case, we must construe Subsection (f)'s verb "use" not in isolation, but in context. Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012), at 167. ("The text must be construed as a whole."); *see also Smith v. United States,* 508 U.S. 223, 229 (1993) ("Language, of course, cannot be

---

[5] "Use." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/use (Definition5).

[6] "Use." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/use (Definition 1).

[7] "Use." Dictionary.com, https://www.dictionary.com/browse/use (Definition 1).

interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it."). Interpreting words in context becomes even more critical when construing words with wide-ranging meanings. As the United States Supreme Court has noted, "the word 'use' poses some interpretational difficulties because of the different meanings attributable to it." *Bailey v. United States*, 516 U.S. 137, 143 (1995) (construing the verb "uses" in the context of another statute). For this reason, the principle of statutory construction that mandates interpreting words in context "is particularly true of a word as elastic as 'use[.]'" *Smith,* 508 U.S. at 241–42 (Scalia, J., dissenting). Reading "uses" in the context of the entirety of Subsection (f) helps clarify what it means to say that a magistrate "uses" the procedure in Subsection (f).

To interpret "uses" in context, we will first pull back from that isolated verb to examine the entire clause in which the word appears. The Legislature writes, "[i]f a *magistrate* uses the procedure described by this subsection . . . ." TEX. FAM. CODE § 51.095(f). So, clearly, Section 51.095(f)'s exclusionary rule does not depend on whether the procedure was used at all, by just anyone. Under the terms of the statute, it is specifically the magistrate who uses, or does not use, the procedure. And this legislative choice—to assign the role of "user" to the magistrate specifically—is repeated throughout the entire subsection and is apparent right from the outset.

The magistrate, alone, is the one entity given the discretion to choose whether to invoke Subsection (f) in the first place; "A *magistrate*

who provides the warnings required by Subsection (a)(5) for a recorded statement *may* at the time the warnings are provided request . . ..." No one else involved in the investigatory process is afforded the discretion to use or not use the procedure. In fact, the only other entity mentioned in Subsection (f)—"the officer"—is given a task to complete; namely, the officer is directed to return the child and the recording in compliance with the magistrate's request. *He* has no discretion not to comply with that directive once it is initiated.

Here, Barrera followed the express terms of the statute by requesting that the officers return Appellee and the recording of the interrogation after questioning, so that he could make a voluntariness determination. His intention to ultimately view the recording cannot reasonably be doubted; Barrera made his request twice and repeatedly explained at the suppression hearing that he waited for over four hours at the sheriff's office for the specific purpose of being able to review the recording as requested. He never revoked this unequivocal initial request.[8] He never indicated while Appellee was being questioned that

---

[8] Barrera testified that he saw Appellee being handcuffed at the sheriff's office upon his return from questioning. One may naturally question why Barrera did not insist that Appellee be returned to him at this moment. Barrera was not specifically asked why he did not seek to see Appellee and the recording in this moment in the hallway. Nevertheless, the trial court's findings, as well as an independent review of the record, demonstrate that Barrera's failure to do so was not a revocation of his initial request. For one, Barrera testified that at the moment he saw Appellee, he was not sure whether the interrogation had concluded. Additionally, Barrera was not leaving because he decided he did not want to follow through with viewing the recording. Rather, Barrera indicated that he decided to leave for the night since it "was already 4:00 a.m." But Barrera never indicated that he had changed his mind about ultimately reviewing the video recording at some later point. Rather, he repeatedly maintained that he was waiting to review the recording

he no longer wished to utilize the discretionary extra protection he had earlier decided to invoke.[9] And even if Barrera had changed his mind about reviewing the recording, at no time was such a change of heart communicated to the officers. The only reason that Barrera did not

and that he "was going to see it" once the officers prepared the video for his viewing. Barrera seemed intent on returning to the sheriff's office, after getting some rest and once he was informed that questioning was complete. Finally, this moment in the hallway was not a particularly long span of time for Barrera to reassert his request for Appellee to be returned to him. While the record does not specify the exact amount of time that Appellee and Barrera were in the same hallway inside the sheriff's office, a reasonable reading of the record suggests that Barrera saw Appellee for only a brief moment; Barrera explained that he merely "ran into [Appellee] in the hall."

Additionally, the trial court held the officers responsible for failing to return Appellee to Barrera as requested. The trial court found that "law enforcement officers did not ever bring Torres back to the magistrate along with the video recordings, despite the fact that the magistrate had requested in writing that this be done." Trial Court's Findings of Fact and Conclusions of Law at 4. Accordingly, the trial court concluded that "[t]he magistrate invoked but the law enforcement officers did not comply with the plain language of Sec. 51.095(f), Texas Family Code." *Id.* In reviewing a trial court's ruling on a motion to suppress evidence, we give almost total deference to the trial court's determination of historical fact. *Furr*, 499 S.W.3d at 877. Since the record supports that it was the officers' fault that Appellee was not returned, we defer to the trial court's finding. So, our application of law to fact in this opinion assumes that the officers did not comply with Barrera's request and that Barrera never revoked his desire to view the recording and make a determination whether the statements were voluntary.

[9] We do not have to decide what would have happened under Section 51.095(f) if Barrera had revoked his initial request for the officers to return Appellee. He could have communicated that he changed his mind, but he did not. Consequently, while we are holding that Subsection (f) means that the magistrate is the person given discretion to use or not use the procedure in Subsection (f), we do not decide all imaginable questions related to the extent of the magistrate's discretion. For example, we do not address whether a magistrate who initially exercises his discretion by making the request then has the further discretion to choose not to view the recording or make a voluntariness determination. Those facts are not before us in this case.

ultimately view the recording and make a determination of voluntariness is because the officers did not comply with Barrera's unrevoked request.

It would be inconsistent with the clear import of Section 51.095(f) to construe it in a way that allows the failure of law enforcement to comply with the magistrate's request to mean that the *magistrate* did not use the procedure. By empowering the magistrate, the Legislature seems to have envisioned at least some scenarios in which the facts of a particular juvenile interrogation might concern the magistrate enough for him to invoke the extra, optional layer of juvenile protection offered by Subsection (f). The State's construction would allow a scheme that permits an unmistakable intent to use the procedure, from the only actor legislatively empowered to choose whether or not to use it, to be easily thwarted by a different actor who is not neutral, detached, or disinterested.[10] Adopting the State's proposed interpretation would

---

[10] The flaw in construing Subsection (f) in the way proposed by the State is highlighted by thinking through the likely reasons that the Legislature specifically chose to empower the magistrate in Subsection (f). In the context of our criminal justice system, and specifically during the State's investigation phase, the magistrate plays a special role. The magistrate is presumed to be neutral, detached, and disinterested regarding the outcome of the investigation, without bias or loyalty towards either the State or defendant. It is because of this impartiality that magistrates are often entrusted, including in Subsection (f), with the role of providing a neutral check on the natural impulses of state actors, who might be somewhat less than scrupulous in protecting the rights of defendants. As memorably put by the United States Supreme Court in the Fourth Amendment context, state officers are characteristically "zealous" while "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

In the context of the magistrate's well-known, "essential role as a check on police discretion," *Missouri v. McNeely*, 569 U.S. 141, 155 (2013), and the Legislature's choice to assign the power to "use" the procedure in Subsection (f) solely to magistrates, we will not adopt the State's construction. Doing so

allow for situations in which a concerned magistrate's request could be easily—and without consequence—frustrated by the State and its agents, the very parties from whom Subsection (f) seeks to protect the juvenile in the first place.

Since Section 51.095(f) plainly gives discretion only to the magistrate to use the procedure, we construe the statute to mean that it is a magistrate who "uses" the procedure under the facts of this case. When the magistrate makes the initial request but does not ultimately make any determination of voluntariness, we conclude that he still "uses" the procedure, at least when the reason no determination was made is that law enforcement failed to fulfill the magistrate's request.[11]

would mean that a magistrate, having exercised his initial discretion and deciding that extra protection is necessary, nevertheless does not "use" that chosen procedure for exclusionary-rule purposes—not because *he* chose not to use it, but because *state actors* did not comply with the magistrate's manifest request.

[11] According to the logic of the State's argument, Subsection 51.095(f)'s exclusionary provision is essentially binary, envisioning only two scenarios. The magistrate first *completes* the process, and he *then* 1) makes a signed, written determination that the juvenile's statement was "given voluntarily[,]" or he 2) makes a signed, written determination that the juvenile's statement was *not* "given voluntarily." Only in the latter instance does the provision require exclusion. If for some reasons the magistrate fails to enter a signed, written determination, one way or the other, even after having "request[ed]" the procedure at the outset, exclusion would *still* not be required because there will not be a signed, written determination that the statement was *not* "given voluntarily."

There is another way to look at the exclusionary provision that envisions *three* possible scenarios rather than just two. First, the magistrate could make a signed, written determination that a juvenile's statement *was* given voluntarily. In this scenario, the exclusionary rule in Subsection (f) does *not* mandate exclusion. Second, the magistrate could make a signed, written determination that a juvenile's statement was *not* given voluntarily. In this scenario, the exclusionary rule in Subsection (f) *does* mandate exclusion. And

Accordingly, we conclude that Barrera used the procedure and thus triggered Section 51.095(f)'s exclusionary rule. The *officers* did not use the procedure, but Section 51.095(f)'s exclusionary rule hinges on only one specific person's "use" of the procedure—the *magistrate*.

## IV. CONCLUSION

Because Magistrate Barrera "use[d]" the procedure described by Section 51.095(f) of the Texas Family Code, but he has not been permitted to make a determination that Appellee's statements were made voluntarily or involuntarily, the statements are inadmissible. The court of appeals did not err to draw this conclusion. Accordingly, we affirm the court of appeals' judgment.

---

the third scenario is the default scenario. It tells the trial court how to rule if the magistrate unequivocally initiates the proceeding but, for whatever reason, simply fails to make a signed, written determination, one way or the other, *whether* the juvenile's statement was "given voluntarily." When reading the exclusionary provision in this way, the juvenile's statement is not admissible because the failure to enter a signed, written determination *one way or the other* does not constitute the statutorily required determination that the statement was "given voluntarily" (even if it *also* does not constitute a determination that the statement was *not* "given voluntarily"). The default is inadmissibility since the statement is "not admissible" by the express terms of the provision "unless" a determination that it was "given voluntarily" is made.

For reasons we have explained in the text, the three-scenario "default" understanding of the exclusionary provision best effectuates the evident meaning of the statute—to provide the magistrate with some degree of flexibility to insulate more vulnerable juveniles from undue state investigative pressures that may cause their statements to be given involuntarily. Under the State's binary construction of the statute, police officers maintain the ability to thwart the entire process by making sure no determination regarding voluntariness is ultimately made. Under the alternative "default" understanding, the magistrate maintains control of the situation, and police officers are incentivized to fully comply with the process once the magistrate has exercised his exclusive discretion to invoke a more protective procedure on a vulnerable juvenile's behalf.

**DELIVERED:**          April 19, 2023
**PUBLISH**